PARK COUNTY IMPLEMENT CO., a Wyoming Corporation, dba Intermountain Equipment Co., Appellant (Plaintiff below),

v.

Dave CRAIG and Roger Holler, dba Cody Treater Service, Appellees (Defendants below).

No. 3262.

Supreme Court of Wyoming.

Dec. 29, 1964.

John T. Dixon, Powell, for appellant.

Jerry W. Housel and Margie M. Williams, Cody, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Plaintiff sued defendants for the amount due on a purchase of a truck chassis and cab. Defendants entered a general denial, moved for a summary judgment, and thereafter plaintiff filed a similar motion. Certain affidavits and interrogatories were submitted, and the court after considering the matter entered a summary judgment for defendants, from which judgment this appeal is taken.

On February 16, 1962, defendants ordered a 1962 International A–162 chassis and cab from plaintiff, which advised that one was not on hand but should be in the area. Three days later defendants were informed that such a vehicle was at the International Harvester Company in Billings, Montana,

whereupon defendant Holler drove to Billings and there received the vehicle from that company, asking the International employee from whom the vehicle was received for a statement of origin, title certificate, or some evidence of title. The employee responded that the company did not have the same. The agreed selling price was approximately $3,150 delivered in Cody, Wyoming, or approximately $3,115 if defendants took delivery of the truck at Billings. According to the interrogatories and affidavit, defendants brought the vehicle to Cody, put it in their shop, and were installing a hoist and dump bed when a fire occurred March 1, destroying the chassis and cab. Defendants said they had made request of plaintiff's manager for statement of origin or other title papers to no avail, but plaintiff's manager said a statement of origin was tendered to defendants on March 2 and was refused.

 The record discloses no specific bases upon which the defendants sought or were granted summary judgment, and although these are not mandatory under Rule 56, W.R.C.P., their absence is a handicap to a reviewing court. Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347; Steiner v. Wertheimer, 6 Cir., 250 F.2d 574; 3 Barron and Holtzoff, Federal Practice and Procedure, p. 201 (1958). And their presence would also seem to be desirable in the trial court.

Assuming that the position of the litigants has remained consistent, we review defendants' arguments here. In essence they say that there was no completed sale because either (1) the Montana law was applicable and under holdings in that jurisdiction there was no completed sale until there had been compliance with various sections of the motor vehicle code, notably, the issuance of a certificate of ownership. Safeco Insurance Company of America v. Northwestern Mutual Insurance Company, 142 Mont. 155, 382 P.2d 174, or (2) even if Wyoming law applied various of the motor vehicle statutes made issuance of a certificate of title requisite to any trans-

fer. They say further that the Uniform Commercial Code—Sales (Article 2, Chapter 22, Title 34, W.S.1957 (1963 Cumulative Supp.)), does not apply since a motor vehicle cannot be classified as "goods." Accordingly, they assert that there was no genuine issue as to any material fact and that they were entitled to judgment as a matter of law. We examine such theses. Before deciding the applicability of Montana law, we must determine what is the law of Wyoming, that State being the residence of the parties and the scene of every activity concerning the motor vehicle in question except its having been received in Billings, Montana, by Holler, one of the defendants. At the inception of the synthesis, we note that the Uniform Commercial Code—Sales had been adopted in Wyoming January 1, 1962, and was in effect at the time of the transaction, and further that this code has been held as applicable to motor vehicles. Semple v. State Farm Mutual Automobile Insurance Company, E.D.Pa., 215 F.Supp. 645.

 This leads us to the section of the Uniform Commercial Code dealing with the territorial application of the Act, § 34-1-105, W.S.1957 (1963 Cumulative Supp.), which provides:

"(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this act [§§ 34-1-101 to 34-10-105] applies to transactions bearing an appropriate relation to this state."

The wording of § 34-1-105 was not accidental but was the result of years of study by persons especially interested in this field. Even prior to the earliest concept of a uniform sales act the conflict-of-laws problems concerning jurisdiction were many and these continued into the first version of the commercial code, which provided in § 1-105(2) that various articles

of the code should apply whenever any contract or transaction within the terms of any of the mentioned articles either (a) was made, offered or accepted or the transaction occurred within the code state; or (b) was to be performed or completed wholly or in part within the code state. In criticism of that provision, it was said that it permitted application of the code to a transaction which touched the code state only in the most casual and even accidental way and therefore raised a serious constitutional question as to due process. Judge Herbert F. Goodrich, Chairman of the Editorial Board for the Uniform Commercial Code, in 1952 pointed out that the commercial world did not and should not regard what is essentially in its eyes one transaction to be a series of separate, isolated occurrences but rather looked to the totality of the transaction. 1952 Wis. L.Rev. 199, 206. The problem was considered at length, especially in the larger states where there are extensive commercial transactions and volumes of comment and discussion are available on the subject, e. g., 1955 New York Law Revision Commission Report, Study of the Uniform Commercial Code; Second Report of the New Jersey Commission to Study and Report upon the Uniform Commercial Code (1960). The official Uniform Code Comment regarding revised § 1–105, which is identical with its counterpart in Wyoming, is manifest in disclosing both the problems and the desired solution:

"Where a transaction has significant contacts with a state which has enacted the Act and also with other jurisdictions, the question what relation is 'appropriate' is left to judicial decision. In deciding that question, the court is not strictly bound by precedents established in other contexts. Thus a conflict-of-laws decision refusing to apply a purely local statute or rule of law to a particular multi-state transaction may not be valid precedent for refusal to apply the Code in an analogous situation. Application

of the Code in such circumstances may be justified by its comprehensiveness, by the policy of uniformity, and by the fact that it is in large part a reformulation and restatement of the law merchant and of the understanding of a business community which transcends state and even national boundaries. Compare Global Commerce Corp. v. Clark-Babbitt Industries, Inc., 239 F.2d 716, 719 (2d Cir.1956). In particular, where a transaction is governed in large part by the Code, application of another law to some detail of performance because of an accident of geography may violate the commercial understanding of the parties." Uniform Commercial Code (U.L.A.) § 1–105, p. 17 (1962).

In the light of the development of the statute—its history, purposes, and objectives—and the arrangements between the parties in this case, the going to Billings for the vehicle would seem under any concept to have been a minor part of the transaction, and the portions occurring in Wyoming bear an appropriate relation to an extent that the Uniform Commercial Code applies. See Schnabel Company v. School District of Pittsburgh, 178 Pa.Super. 553, 116 A.2d 73, 75. We hold, therefore, that the transaction in this case was within the Uniform Commercial Code—Sales. The buyers accepted the goods under the provisions of § 34–2–606(1) (c), W.S.1957 (1963 Cumulative Supp.), "Acceptance of goods occurs when the buyer does any act inconsistent with the seller's ownership," when they began installing a hoist and dump bed on the vehicle. At that time the buyer became liable under the provisions of § 34–2–607(1), "The buyer must pay at the contract rate for any goods accepted."

■ Even if there is merit in defendants' contention concerning the pertinency of various provisions of the motor vehicle law requiring certificates of title to be issued under certain circumstances, the rights of the parties under the code do not depend

upon title. As is noted in the official comment:

"This Article [Uniform Commercial Code—Sales] deals with the issues between seller and buyer in terms of step by step performance or non-performance under the contract for sale and not in terms of whether or not 'title' to the goods has passed. * * *" Uniform Commercial Code (U.L.A.) § 2–401, p. 190 (1962).

In the instant case, there were no issues of fact before the court except the question of whether or not the plaintiff offered statement of origin to defendants on March 2 and this point is not material. Under the admitted facts the defendants accepted the goods at an agreed price. The summary judgment granted to defendants was in error; the motion of plaintiff for summary judgment should have been granted. The cause is reversed with instructions to enter judgment for plaintiff.

Reversed.