**OWENS–CORNING FIBERGLAS CORPORATION, Plaintiff,**

v.

**SONIC DEVELOPMENT CORPORATION, et al., Defendants,**

v.

**AMERICAN EMPLOYERS' INSURANCE CO., Third-Party Defendant.**

Civ. A. No. 81–2230.

United States District Court, D. Kansas.

Sept. 10, 1982.

534

Lee M. Smithyman, Edmund S. Gross, Weeks, Thomas & Lysaught, Chtd., Kansas City, Kan., for plaintiff.

Ronald W. Nelson, Douglas C. McKenna, Alder, Nelson & McKenna, Overland Park, Kan., for defendant Sonic Development Corp.

Thomas D. Hyde, Stubbs & Mann, P.C., Kansas City, Mo., J. Roy Holliday, Speer, Austin, Holliday, Lane & Ruddick, Olathe, Kan., for defendant Air Engineering, Inc.

Charles A. Getto, McAnany, Van Cleave & Phillips, Kansas City, Kan., George A. Lowe, Christopher Bacon, Lowe, Terry & Roberts, Olathe, Kan., for defendant Scales Air Compressor Corp. Michael G. Norris, Payne & Jones, Olathe, Kan., for third-party defendant American Employers' Ins. Co.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter comes before the Court on separate motions by three of the defendants

for summary judgment and a motion by one defendant to compel discovery and for costs. Plaintiff's cause of action arises from the breakdown of three air compressors used in plaintiff's pollution control system at its Kansas City, Kansas production plant. Plaintiff brings suit against the manufacturer of the air compressors and various parties who selected the particular type of air compressors used, installed them and maintained them. The court will discuss each defendant's motion separately.

## I

### SONIC DEVELOPMENT CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Sonic Development Corporation [hereinafter Sonic] is the party who sold the air compressors to plaintiff. On June 30, 1978, plaintiff requested a quote from Sonic on a gas cooling system for plaintiff's plant. On July 6, 1978, Sonic replied with a proposal for the delivery of a SoniCool Evaporative Gas Cooling System to meet plaintiff's specifications. The reverse side of the Sonic proposal contains the following language:

"WARRANTY. The Company warrants that all materials and/or workmanship supplied hereunder will be of good quality. The obligation of the Company under this warranty shall be limited to replacing any materials furnished hereunder established to be of defective quality within a period of one year from the time of installation thereof and the Company's liability under this warranty shall not extend beyond such replacement. Purchaser shall give prompt and written notice to the Company of any observed defects.

"THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES AND MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. In no event shall the Company be liable for prospective profits or any incidental, consequential or special damages arising from the use of its products even if the Company had been advised of the possibility of such damages. No person employed or affiliated with the Company is authorized to assume for the Company any other liability other than the liabilities provided for hereunder. . . . All equipment and material not manufactured by the Company but supplied hereunder shall receive only such warranty, if any, as given by the manufacturer thereof."

Plaintiff responded to Sonic's proposal with a purchase order dated July 20, 1978. Paragraph two (2) on the reverse side of the purchase order contains the following language:

"The Seller expressly warrants that all articles ordered to specifications will conform thereto and to the drawings, samples or other descriptions furnished or adopted by Buyer and that all articles will be merchantable, of good material and workmanship and free from defect."

There are no warranty disclaimer provisions in plaintiff's form, nor are there any limitation-of-action provisions.

At the bottom of the front side of plaintiff's form is a "Vendor Acknowledgment" section, which contains the following statement:

"By acceptance of this order or revision, seller agrees to furnish materials in accordance with all instructions shown on the face and reverse side of order and revision."

Mr. R.M. Adams of Sonic signed the "Vendor Acknowledgment" on behalf of Sonic on July 26, 1978.

Paragraph one (1) on the reverse side of the form states, in pertinent part, as follows:

"This purchase order constitutes Buyer's offer to Seller, and becomes a binding contract on the terms set forth herein when accepted by Seller either by acknowledgment or the commencement of performance hereof. . . ."

The original specifications were altered by agreement of the parties to allow the

use of three Quincy air compressors in the gas cooling system. The three Quincy compressors were put into service in April, 1979.

The Quincy air compressors were installed by Air Engineering, Inc., also a defendant in this lawsuit. Sonic claims that Air Engineering performed the entire installation; plaintiff claims that Air Engineering's responsibilities related only to the air compressors, and not to the rest of the cooling system.

About seven months later, on October 29, 1979, all three air compressors failed. Plaintiff secured some portable air compressors, and immediately notified Air Engineering about the compressor failure. Plaintiff contends that Sonic represented that Air Engineering was Sonic's agent with respect to the Quincy air compressors. Sonic denies this.

On November 17, 1980, plaintiff wrote a letter to Sonic about the failure of the air compressors.

Sonic first moves for summary judgment on the ground that plaintiff failed to notify Sonic of any alleged defects in the air compressors until more than one year after the compressors had failed. Sonic contends that the compressors failed in October, 1979, but Sonic was not notified of the failure until November, 1980.

K.S.A. 84–2–607(3)(a) provides that a "buyer must within a reasonable time after he discovers or should have discovered a breach [notify] the seller of the breach or be barred from any remedy."

■■ The court cannot decide questions of fact on a motion for summary judgment. *Barber v. General Electric Co.,* 648 F.2d 1272, 1276 (10th Cir. 1981). We are of the opinion that there exists a question of fact here as to whether or not Air Engineering was the agent of Sonic for purposes of receiving notice of defects in the Quincy air compressors. It is undisputed that plaintiff notified Air Engineering immediately after the air compressors failed.

There is also a question of fact as to whether or not plaintiff's notice to Sonic came "within a reasonable time" after the failure of the air compressors. The compressors failed on October 29, 1979, and plaintiff notified Sonic, at the very latest, on November 17, 1980. Viewed in a light most favorable to the plaintiff, we think that this evidence presents an issue of fact upon which reasonable minds might differ. Summary judgment is therefore not appropriate. *Williams v. Borden, Inc.,* 637 F.2d 731, 738 (10th Cir. 1981).

Sonic next moves for summary judgment on the grounds that according to the contract between the parties, plaintiff's sole remedy is against the manufacturer of the defective air compressors, Quincy Compressor Division, a division of Colt Industries Operating Corporation [hereinafter Quincy]. Sonic contends that this lawsuit is governed by the provisions of its proposal to plaintiff, in particular Sonic's proposal at ¶ 9, which stated that Sonic's liability for defective parts was limited to replacing any such defects within one year from the time of installation, and Sonic's provision that all equipment and material not manufactured by Sonic would be subject only to the warranty, if any, which came from the manufacturer of that item.

Sonic also moves for summary judgment on the ground that plaintiff failed to commence this civil action within the one-year limitations period provided for in the contract between the parties.

The Sonic proposal, at ¶ 12, contains a one-year limitation on actions for breach of the agreement between the parties. It states, in pertinent part:

"... Any action for breach of any provision hereof shall be commenced within one year from the date of any such breach provided that an action for nonpayment may be brought within one year from the date of last payment."

Sonic contends that this lawsuit is governed by the terms of the proposal which it sent to plaintiff. Plaintiff claims that this lawsuit is governed by the provisions of its purchase order, which it sent to Sonic in response to Sonic's proposal.

This is a "battle of the forms," each party claiming that its own form is the whole and exclusive contract between the parties. To resolve a battle of the forms, the court must apply K.S.A. 84–2–207, which provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a) the offer expressly limits acceptance to the terms of the offer;

"(b) they materially alter it; or

"(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act."

▪ When each party uses their own form, it is to be expected that the acceptance will not correspond to the terms of the offer in many respects. The acceptance is, however, valid and is not a counteroffer unless the acceptance is made conditional on assent to the additional or different terms. Cf. Roto-Lith, Ltd. v. F.P. Bartlett & Co., 297 F.2d 497 (1st Cir. 1962). If either party is not a merchant, as is the case here, the additional terms do not become part of the contact. K.S.A. 84–2–207(2).

▪ If the acceptance contains terms which conflict with terms of the offer, then the conflicting terms cancel each other out. Southern Idaho Pipe & Steel v. Cal-Cut Pipe & Supply, Inc., 98 Idaho 495, 567 P.2d 1246, 1254 (1977). The contract between the parties consists of the terms to which both parties expressly agree, with the contested terms being supplied by the applicable sections of the Uniform Commercial Code [hereinafter UCC]. J. White and R. Summers, Uniform Commercial Code, 2d Ed., §§ 1–2, pp. 27–30 (1980). See also, K.S.A. 84–2–207, Official Comment 6.

Sonic's proposal and plaintiff's purchase order have several conflicting provisions on matters pertinent to this motion for summary judgment. First, Sonic's proposal provides that Sonic "warrants that all materials and/or workmanship supplied hereunder will be of good quality." Plaintiff's purchase order provides, in contrast, that Sonic will warrant "that all articles will be merchantable, of good material and workmanship and free from defect."

Second, Sonic's proposal provides that Sonic will only be liable for replacement of defective goods "within a period of one year from the time of installation thereof and the Company's liability under this warranty shall not extend beyond such replacement." Plaintiff's form contains no such limitation.

Third, Sonic's proposal provides that all "equipment and materials not manufactured by the Company [Sonic] . . . shall receive only such warranty, if any, as given by the manufacturer thereof." Plaintiff's form provides that Sonic shall warrant "all articles" to be in conformance to applicable specifications, drawings or samples, or other descriptions furnished by plaintiff, and that "all articles" will be merchantable, of good material and workmanship.

Finally, Sonic's proposal states, in part, at ¶ 12 that any action for breach "shall be commenced within one year from the date of any such breach." Plaintiff admits that its form is silent as to any such period of limitation. Further, it is admitted that although the air compressors failed in October, 1979, this lawsuit was not commenced until August 7, 1981, well beyond that one-year limit.

At first one might conclude that under the application of K.S.A. 84–2–207(1) Sonic's proposal was an offer, and that plaintiff's purchase order was an acceptance of that offer even though it contained some different or additional terms. However, we find that the controlling language in this case is found in the last clause of § 84–2–207(1), that acceptance is valid "unless acceptance is expressly made conditional on assent to the additional or different terms."

■ At the bottom of the front of plaintiff's form, there is a space for a signature in a section called "Vendor Acknowledgment." This section, quoted *supra,* when read together with ¶ 1 on the reverse of plaintiff's form, leads to the conclusion that plaintiff did not intend any binding contract unless Sonic accepted the terms of the purchase order either by signing the acknowledgment or by commencing performance. Of course, Mr. R.M. Adams signed plaintiff's purchase order on behalf of Sonic, and the conclusion is inescapable that he thereby accepted the terms and conditions of the purchase order although they may differ from the terms of Sonic's proposal.

Therefore, we find that the terms and conditions of this sale are governed by plaintiff's purchase order. Sonic is bound by an express warranty of merchantability, and an express warranty that "all articles will be . . . of good material and workmanship and free from defect." We further find that Sonic is not protected by the warranty disclaimer provisions of its proposal, and further is not protected by the one-year limitations period for bringing suit for breach of warranty. Sonic's motion for summary judgment will therefore be denied.

## II

### QUINCY COMPRESSOR DIVISION'S MOTION FOR SUMMARY JUDGMENT

Quincy Compressor Division, a division of the Colt Industries Operating Corporation, is a Delaware corporation with its principal place of business in New Jersey. Quincy has its manufacturing plant in the state of Illinois. Plaintiff purchased a pollution control system from Sonic. Sonic installed the system in plaintiff's plant in Kansas City, Kansas. As part of the pollution control system, Sonic sold plaintiff three air compressors Sonic had purchased from defendant Scales Air Compressor Corporation [hereinafter Scales]. Scales had purchased the air compressors from defendant Quincy, the party making this motion, who manufactured the air compressors at defendant Quincy's plant in Quincy, Illinois. Quincy shipped the air compressors directly to plaintiff's plant in Kansas City, Kansas.

Scales purchased the three compressors from Quincy pursuant to its distributorship agreement with Quincy. The sale of the compressors to Scales was subject to a document entitled "Quincy Compressor Division Standard Terms and Conditions." Contained within this document was a "Compressor Warranty, Helical Screw Compressors."

The compressors were delivered by defendant Quincy to defendant Scales, F.O.B., Quincy, Illinois. The compressors were shipped directly to plaintiff's plant in Kansas City, Kansas.

There was no written or oral communication between plaintiff and Quincy at any time through the completion of installation and start-up of the compressors at plaintiff's plant. Plaintiff received no written warranty from defendant Quincy. To date, plaintiff is aware of no verbal representation or warranty from any defendant concerning fitness, merchantability, workmanship or defect, which warranty or representation plaintiff claims was breached.

To date, plaintiff has no proof that defendant Quincy was informed by anyone or aware of the particular purpose to which the three compressors were to be put. Quincy merely sold Scales the three compressors that defendant Scales had ordered, and was unaware that plaintiff was relying on defendant Quincy's skill or judgment to select or furnish the compressors for any particular purpose.

Defendant Quincy's employees were not involved in the installation of the three compressors; however, there is a factual dispute as to whether or not defendant Air Engineering was Quincy's Kansas City agent for matters associated with the Quincy compressors. Air Engineering admits that they were involved in the start-up of the compressors, but denies that they were involved in the installation of the air compressors.

Except for possible agency relationship with Air Engineering, Quincy had no business dealings with Sonic with respect to the installation of the three compressors.

The first question put before the court is the choice-of-law question. Plaintiff claims damages against defendant Quincy for breach of express and implied warranties of merchantability and fitness for a particular purpose. These breach of warranty claims arise from the sale [K.S.A. 84–2–106(1)] of goods (air compressors) [K.S.A. 84–2–105(1)], and therefore arise under the U.C.C., K.S.A., Chapter 84.

K.S.A. 84–1–105(1) provides appropriate choice-of-law considerations for cases arising under the U.C.C. That section states:

"Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. *Failing such agreement this act applies to transactions bearing an appropriate relation to this state.*" (Emphasis supplied.)

There is no allegation that the parties agreed that the law of any state should govern the warranty claims herein at issue; therefore, the question is whether or not the transaction between the parties bears "an appropriate relation to this state."

There is no Kansas case law developed under this statute. The Kansas Code Comment to the section states that "pre-Code conflicts-of-law precedents in other contexts [will] not be binding upon the courts" construing this section. Case law from other states provides some guidance. An ap-propriate relation to the forum state has been found where substantially all of the elements of the transaction occurred in the forum state. *Park County Implement Co. v. Craig,* 397 P.2d 800 (Wyo. 1964). In cases under the UCC involving the breach of implied warranties which gave rise to personal injuries, the state in which the injury occurred has been found to be a state with an appropriate relation to the sale. *Bilancia v. General Motors Corp.,* 538 F.2d 621 (4th Cir. 1976); *Hardman v. Helene Curtis Industries, Inc.,* 48 Ill.App.2d 42, 198 N.E.2d 681, 12 A.L.R.3d 1033 (1964).

Here, defendant Quincy shipped the air compressors into this state; the air compressors were used in Kansas, and if any warranties exist, they were breached in Kansas. K.S.A. 84–2–725(2). We therefore find an appropriate relation between the transaction between the parties and the state of Kansas, and we will apply the law of Kansas to this motion for summary judgment.

We now turn to the merits of plaintiff's claim for breach of implied warranty of fitness for a particular purpose. In Kansas, such a warranty arises when a seller, *at the time of contracting,* knows or has reason to know of a particular purpose for which the goods are required *and* also knows that the buyer is relying on the seller's skill and judgment to select or furnish suitable goods. K.S.A. 84–2–315. (Emphasis supplied.)

This section requires a buyer and a seller and strongly implies that the buyer and seller be related to one another by contract. There is admittedly no contract between Quincy and plaintiff; therefore, we find no warranty of fitness. Quincy's only contract for sale was between it and Scales. Furthermore, plaintiff admits that it had no oral or written communication with Quincy or Sonic concerning the three compressors at any time through completion of their installation and their start-up at plaintiff's plant. *See* Quincy's Summary Judgment Motion, Statement of Facts, Nos. 15a and 15b, and plaintiff's response there-

to. Plaintiff therefore is not able to prove that Quincy knew the particular purpose for which the compressors were to be used *and* that Quincy knew that plaintiff was relying on Quincy to furnish suitable goods.

The court concludes no implied warranty of fitness for purpose exists in favor of plaintiff against Quincy. Nevertheless, plaintiff argues in substance that such a warranty existed in its favor against Sonic, and that warranty may be charged along the chain of distribution against Quincy.

■ The issue is whether or not privity of contract is a requirement in Kansas for a claim based on breach of implied warranty. We hold that because plaintiff did not buy the air compressors directly from Quincy, but instead bought them from Sonic, an intermediary in the chain of distribution, there is no privity between plaintiff and Quincy, and thus no cause of action against Quincy for breach of an implied warranty.

K.S.A. 84–2–318 provides that lack of privity is not a bar to recovery by a *natural person* who is *personally injured* by a breach of warranty. Plaintiff is, of course, not a natural person and did not suffer personal injury because of the breach of warranty. Therefore, lack of privity of contract bars this lawsuit. *Citizens State Bank v. Martin,* 227 Kan. 580, 589–90, 609 P.2d 670 (1980).

■ Breach of warranty actions, like all breach of contract actions, must be brought by parties who are in privity of contract. *Evangelist v. Bellern Research Corp.,* 199 Kan. 638, 647, 433 P.2d 380 (1967). As an exception to the privity requirement, no privity is required where personal injury is involved. *B.F. Goodrich Co. v. Hammond,* 269 F.2d 501 (10th Cir. 1959). Privity is also not required in personal injury cases involving implied warranties that food is fit for human consumption, unwholesome drink containers, and health preparations intended for human use. *See, e.g., Chandler v. Anchor Serum Co.,* 198 Kan. 571, 579–80, 426 P.2d 82 (1967), for cited cases. K.S.A. 84–2–318 was not intended to alter these common-law rules.

*See also* Kansas Code Comment to K.S.A. 84–2–318.

Furthermore, the Kansas Legislature has rejected a draft version of § 2–318 which would have extended implied warranties to all foreseeable product users, even if no personal injury was involved. For these reasons, we hold plaintiff cannot maintain his action for breach of implied warranty of fitness for purpose.

■ Our preceding remarks apply equally to plaintiff's claims against Quincy for breach of implied warranty of merchantability. Absent privity, plaintiff cannot maintain a cause of action for breach of this implied warranty against Quincy.

■ Plaintiff also brings claims against Quincy based on breach of certain express warranties. It is, however, undisputed that the only express warranties Quincy gave to anyone were given to defendant Scales. Plaintiff received no warranties from either Quincy or Scales. In Kansas, it is necessary to prove both that an express warranty was made, and that it was relied upon by the buyer. *Land v. Roper Corp.,* 531 F.2d 445, 448 (10th Cir. 1976); *Topeka Mill & Elevator Co. v. Triplett,* 168 Kan. 428, 436, 438, 213 P.2d 964 (1950). *See also,* K.S.A. 84–2–313, Kansas Comment 1 [affirmations of fact become part of the bargain, upon which it is intended that the buyer shall rely in making the purchase]. Due to the fact that plaintiff did not receive any express warranty from Quincy, and because plaintiff did not rely on any express warranty made by Quincy, we hold that plaintiff has no cause of action against Quincy for breach of express warranty.

Quincy has moved for summary judgment as to the negligence claim against it on a number of grounds. The motion will be granted on two grounds.

■ First, plaintiff has stated that the failure of the compressors was due to negligent manufacture, design and installation. Plaintiff's damages are the rental, maintenance, servicing and fuel for replacement portable air compressors. Further, plaintiff

claims damages for removing the defective compressors and having them rebuilt. Because of this damage claim, this action does not properly sound in tort. There is no claim of injury to persons or to property; plaintiff only makes claims for the furnishing of a defective product. "If the result is simple economic loss, liability and damages are governed by breach of contract principles," not by tort principles. *Broce-O'Dell Concrete Products, Inc. v. Mel Jarvis Construction Co., Inc.,* 6 Kan.App.2d 757, 760, 634 P.2d 1142, 1145 (1981).

Second, and just as important, if not more so, Quincy has moved for summary judgment on the ground that Quincy has alleged no act of negligence. Plaintiff responds that the air compressors were noisy and failed to produce proper air pressure. Plaintiff cites case law pertinent to Rule 12(b)(6) motions to dismiss, and takes the position that it should not be required to prove the specific causes of these failures in order to defeat the motion for summary judgment.

■ It is true that when a motion to dismiss has been made, the court will not grant the motion unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim. *See, e.g., Evans Transportation Co. v. Argentine Eagles, Post 213,* No. 81–2364, *unpublished* (D. Kan. 1982). This is a motion for summary judgment, however, not a motion to dismiss. According to Rule 56(e), F.R.C.P.:

"... When a motion for summary judgment is made and supported as provided in this rule, an adverse party *may not rest upon the mere allegations or denials of his pleading,* but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis supplied.)

■ We find that a motion has been made for summary judgment, in which Quincy has argued that plaintiff cannot prove a breach of duty to design and manufacture its air compressors properly, if any

such duty exists and cannot prove the element of causation. Plaintiff therefore has the affirmative duty of showing the court that there are issues of fact for trial. Plaintiff cannot merely rely on its pleaded allegations. This is not a case in which the doctrine of *res ipsa loquitur* applies, because Quincy admittedly did not have exclusive control over the air compressors. *Bias v. Montgomery Elevator Co.,* 216 Kan. 341, 343, 532 P.2d 1053 (1975). Plaintiff has failed to show that there is evidence of a breach of duty by Quincy or evidence of causation; therefore, plaintiff has failed to "set forth specific facts showing there is a genuine issue for trial." Rule 56(e), F.R.C.P. Summary judgment may therefore be entered against plaintiff on the negligence cause of action. *Id.*

### III

### AIR ENGINEERING'S MOTION FOR SUMMARY JUDGMENT

■ Air Engineering has brought a third-party claim against American Employers' Insurance Company in this action. Air Engineering alleges that American Employers' Insurance Company is obligated to provide Air Engineering with a defense to this lawsuit, and to pay any damages against Air Engineering. The insurance company denies these allegations on the grounds that the policy excludes coverage for the matters asserted in plaintiff's complaint.

Under the policy of insurance, coverage did not extend to claims for damages arising out of the "named insured's products," to loss of use of tangible property which was not physically injured, or to damage claims relating to the repair, replacement or loss of use of the "named insured's products." Air Engineering claims that the air compressors were Quincy's products, not the products of Air Engineering. If they were Quincy's products, then they were not the "named insured's products," and the policy should cover Air Engineering's defense of this lawsuit.

American Employers', on the other hand, takes the position that "named insured's products" means "goods or products manufactured, sold, handled, or distributed by the named insured or by others trading under his name . . ." Under this definition, American Employers' argues that it is not obligated to provide a defense to this lawsuit because this lawsuit arises from the breakdown of air compressors "handled" or "distributed" by Air Engineering.

The court finds that the statement of facts set out in the motion for summary judgment and the responsive brief provide a basis for conflicting ultimate inferences as to the nature and quality of Air Engineering's actions in regard to the air compressors at issue here. Where such conflicting inferences can be drawn, the case is not one for summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). On the present state of the record, the court is unable to find as a matter of law whether or not Air Engineering handled or distributed the air compressors, or whether or not these air compressors are the "named insured's products."

## IV

### QUINCY'S MOTION FOR AN ORDER COMPELLING DISCOVERY AND FOR ATTORNEY'S FEES

Defendant Quincy moves for an order of the court directing plaintiff to respond to Quincy's fifth set of interrogatories to plaintiff. Plaintiff responds that the interrogatories are burdensome, seek irrelevant information, and seek legal conclusions and attorney work product. In light of the foregoing Memorandum and Order granting Quincy's motion for summary judgment, we consider the motion to compel to be moot.

The motion for attorney's fees will be denied on the ground that there is no provision in the Federal Rules of Civil Procedure for the award of expenses to a party who does not prevail on the motion to compel discovery. *See* F.R.C.P. 37(a)(4).

Both portions of said motion will therefore be denied.

IT IS BY THE COURT THEREFORE ORDERED that defendant Sonic Development Corporation's motion for summary judgment is hereby denied.

IT IS FURTHER ORDERED that defendant Quincy Air Compressor's motion for summary judgment is hereby granted in full.

IT IS FURTHER ORDERED that third-party defendant Air Engineering's motion for summary judgment is hereby denied.

IT IS FURTHER ORDERED that defendant Quincy's motion to compel discovery and for attorney's fees is hereby denied.