192 N.J. Super. 366 (1983)
470 A.2d 25
ARTHUR V. SHANNON, III, PLAINTIFF,
v.
CLIFFORD W. SNEDEKER, DIRECTOR, DIV. OF MOTOR VEHICLES, AND TERRY WATROS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Mercer County.
Decided October 27, 1983.
*367 William T. Sutphin, for plaintiff.
Annette M. Tobia, for defendant Terry Watros.
Dale Laster Lessne, Deputy Attorney General for the State (Irwin I. Kimmelman, Attorney General).
LONG, J.S.C.
This is a case of first impression in New Jersey. It involves a statutory face-off between provisions of the Uniform Commercial Code, N.J.S.A. 12A:1-101 et seq., and the Motor Vehicle Act, N.J.S.A. 39:1-1 et seq. The case arises out of a troublesome situation involving two innocent parties, the seller and the buyer of an automobile who were compromised by their middleman, a fly-by-night automobile dealer. For the reasons expressed below I have concluded that the statutes in question are reconcilable and that the Code provisions require that the seller bear the loss in this transaction.
*368 The facts in the case are as follows: In February of 1983 defendant Terry Watros (hereinafter Watros) took his 1977 TVR automobile which was registered and titled in New Jersey to defendant Hopewell Motor Imports (hereinafter Hopewell) in an effort to find a buyer for the car. He entered into a contract with Hopewell which provided: "I hereby give Hopewell Motor Imports power of attorney to sell my 77 1/2 TVR 2500 M. vehicle I.D. # 3774 TM." Pursuant to that agreement, Watros gave possession of his car to Hopewell. His license plates and his inspection sticker were removed from the automobile which was then prepared for sale by Hopewell. According to Watros, he retained the documents of title which he intended to transfer when he was paid in full.[1] The original contract between Watros and Hopewell contemplated a sales price of $6900 and was later modified to $5000.
The automobile was in the possession of Hopewell on May 13, 1983 when it was purchased by plaintiff Arthur Shannon, III (hereinafter Shannon). The contract price was $6900 plus $294 N.J. sales tax, $8 title document fee, and a $38 New Jersey vehicle registration all of which totaled $7240. Shannon traded in a 1980 Datsun for which he was allowed $2000 towards the purchase price. He also obtained insurance for the car. On May 16, 1983 Shannon received a $5000 auto loan from First National Bank of Princeton, and the entire purchase price was paid in full to Hopewell. Shannon then requested Hopewell to keep the car for repairs which were in fact performed and which he subsequently paid for. The work was completed on May 27, 1983 and Shannon took delivery of the automobile from Hopewell. At that time, Hopewell, a licensed New Jersey automobile dealer, issued to Shannon temporary registration number A288364 and New Jersey license plates bearing the license number 836 VVE. The temporary registration form bore the following relevant information:

*369 1. The dealer will obtain for you the New Jersey title and registration certificate. If there is no lien on your vehicle, the dealer will also give you the New Jersey title. If there is a lien on your vehicle, the original New Jersey title will be presented to the lien-holder until the lien has been satisfied.
2. When you receive your registration certificate from the dealer, please check the expiration date appearing in the expiration box on the registration certificate. YOUR VEHICLE REGISTRATION MUST BE RENEWED DURING THE MONTH AND YEAR INDICATED ON THE REGISTRATION CERTIFICATE IN THE EXPIRATION BOX.
On June 1st Hopewell sent a check for $1000 to Watros in partial payment for the car. (Watros has not cashed the check.)
Shannon did not receive his permanent passenger vehicle registration in the mail, and the First National Bank of Princeton did not receive the encumbered certificate of ownership as promised. Despite repeated assurances by the dealer, no documents or funds have been sent to either the Division of Motor Vehicles or Watros. Hopewell discontinued its business on Thursday, September 22, 1983. Defendant Director of Motor Vehicles has directed Hopewell to turn in all supplies of New Jersey license plates, all temporary registrations and its New Jersey dealers' license.
By this action Shannon is seeking a declaratory judgment that he is the owner of the automobile subject to the security interest of the First National Bank of Princeton and that Watros has no further rights in the vehicle. He also seeks an order requiring the Director of the Division of Motor Vehicles to issue a New Jersey certificate of ownership and New Jersey license plates. The Director of Motor Vehicles has acknowledged service of process, and has indicated by letter that the division will abide by whatever order the court enters. He does not desire to be heard on these matters.
Implicated here are two statutes, the entrustment provision of the Uniform Commercial Code, N.J.S.A. 12:2-403(2) and (3), invoked by Shannon and the certificate of ownership provisions of the Motor Vehicle Act, N.J.S.A. 39:10-1 et seq., invoked by Watros. N.J.S.A. 12A:2-403(2) and (3) provide:

*370 (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business.
(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.
According to Shannon, Watros' contract with Hopewell constitutes an entrusting within the meaning of this Code provision and clothed Hopewell with the power to transfer good title to him. Watros concedes that he gave Hopewell the power to enter into a contract for sale but argues that Hopewell was not empowered to consummate the contract because of the provisions of N.J.S.A. 39:10-1 et seq. which he says govern. N.J.S.A. 39:10-9 lays out the method by which a used motor vehicle is to be sold. It provides that:
When a used motor vehicle is sold in this State, the seller shall, except as provided in section 39:10-15 of this Title, execute and deliver to the purchaser, an assignment of the certificate of ownership or an assignment of the bill of sale issued prior to October 1, 1946. If a security interest exists at the time of such sale or if, in connection with such sale, a security interest is taken or retained by the seller to secure all or a part of the purchase price of the motor vehicle, or is taken by a person who by making an advance or incurring an obligation gives value to enable the purchaser to acquire rights in the motor vehicle, the name and the business or residence address of the secured party or his assignee shall be noted on the certificate of ownership. Nothing in this section shall apply to security interests in motor vehicles which constitute inventory held for sale, but such interests shall be subject to chapter 9 of Title 12A of the New Jersey Statutes.
The Act also prescribes that "No person shall sell or purchase any motor vehicle in this state, except in the manner and subject to the conditions provided in this chapter." N.J.S.A. 39:10-5. According to Watros, Shannon should have demanded title before paying for the car, and failing that, the transfer of the auto violated the act and was invalid.
Watros' reading of the Motor Vehicle Act is undercut by the provisions of the New Jersey Administrative Code enacted pursuant to N.J.S.A. 39:10-4. Those regulations specifically provide for the dealer to process the issuance of a new title and for *371 the purchaser to receive that title by mail. N.J.A.C. 13:21-11.1 et seq. (If a security interest in the automobile exists, the lienholder will receive the new title.) Obviously, for the dealer to properly process the title, he must have the old title assigned by the seller in hand. Clearly, that did not take place in this case. The dealer acted improperly but that is not the issue here. The issue is whether the Motor Vehicle Act requires the buyer to obtain title in hand in order to consummate the sale. The regulations do not support that view.
Alternatively Watros argues that even if title in hand is not required of a buyer in order to consummate a sale in an ordinary situation, a specific reservation of title as between seller and dealer should be honored under circumstances such as these if the title statutes are to be given meaning. This position appears to have been within the contemplation of the framers of the entrustment provision of the Code which I believe to be directly on point here. Watros delivered the car to Hopewell, a merchant who deals in goods of that kind, and acquiesced in Hopewell's retention of the car. Hopewell sold the car to Shannon, a buyer in the ordinary course of business as defined in N.J.S.A. 12A:1-201(9).[2] According to the Code this scenario gave Hopewell the power to transfer all the rights of Watros, the entruster, to Shannon, notwithstanding any side agreement or condition expressed as between Watros & Hopewell. In other words, Watros' intent as expressed by his retention of the title documents, maintenance of insurance and refusal to cash Hopewell's check does not diminish Hopewell's ability, as an entruster to *372 transfer good title to Shannon, a buyer in the ordinary course. Note, The Owners Intent and the Negotiability of Chattels: A Critique of Section 2-403 of the Uniform Commercial Code, 72 Yale L.J. 1205 (1963).
Is this conclusion an implicit emasculation of the provisions of the Motor Vehicle Act governing the transfer of ownership or is it possible to reconcile the statutes at issue in the face of the conclusion reached? Clearly, these statutes govern the same subject matter and must be read in harmony, if possible. State v. Green, 62 N.J. 547 (1973). The legislative intent underpinning the acts is relevant to this analysis. According to N.J.S.A. 39:10-3 the point of the certificate of ownership law is generally to "regulate and control titles to, and possession of, all motor vehicles in this state, so as to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles, or motor vehicles with fraudulent titles within this state." The Uniform Commercial Code, N.J.S.A. 12A:2-403, New Jersey Study Comment indicates that the purpose behind the entrustment provision which approximates the European doctrine of market overt is to protect buyers in the ordinary course of business, and to increase the marketability of goods by granting to such buyers the same interest as that of the person who entrusted the goods to the merchant. Here, the automobile at issue was not stolen; no fraudulent title is involved; and the resolution of this case in favor of the buyer would have no effect on the ability of the Director of Motor Vehicles to regulate or control automobile titles in general. Contrariwise, a strict application of the certificate of ownership law requiring the buyer to bear the burden in this kind of a transaction until he has title in hand would have the effect of eliminating all protection to buyers in the ordinary course and of decreasing the marketability of goods overall. Thus the Uniform Commercial Code can be given primacy in this instance with no negative effect on the administration of the Motor Vehicle Act whereas the Motor Vehicle Act can only be given primacy by directly contravening the purposes of the Code. Accordingly in order to harmonize *373 these acts, the buyer in the ordinary course, Shannon, must be protected. Therefore the entrustment provision of the Code must prevail and Watros, the seller, must bear the loss in this transaction.
This conclusion has been reached in veritably every out of state case which has been faced with the reconciliation of the entrustment provisions of the Code and Motor Vehicle title statutes. Atwood Chevrolet-Olds., Inc. v. Aberdeen Municipal School District, 431 So.2d 926 (Miss. 1983); Island v. Warkenthien, 287 N.W.2d 487 (S.D. 1980); Levin v. Nielsen, 37 Ohio App.2d 29, 306 N.E.2d 173 (Ct.App. 1973); Godfrey v. Gilsdorf, 86 Nev. 714, 476 P.2d 3 (1970); Christopher v. McGehee, 228 Ga. 466, 186 S.E.2d 97 (1971). The court in Atwood Chevrolet-Olds., supra, was faced with a situation similar to that at issue here. There an automobile dealership turned a bus over to a bus distributor for sale while retaining title documents. The bus was ultimately purchased by a school district. The dealership upon hearing of the financial problems of the distributor and fearing that it would not be paid began a replevin action based upon provisions of the Motor Vehicle Act and arguments similar to those advanced here. The issue was framed as follows:
The threshold question is whether the pertinent Mississippi Vehicle Title Statute, section 63-21-31 of the Mississippi Code Annotated (1972), prevails over the pertinent Mississippi Commercial Code provision, section 75-2-403(2) of the Mississippi Code Annotated (1972).
And the court went on to declare:
We hold that it does not.
Section 63-21-31 provides that transfer of a vehicle is not effective unless, "at the time of the delivery of the vehicle", the owner executes an assignment and warranty of title to the transferee. On the other hand, section 75-2-403(2) provides that:
"any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in [the] ordinary course of business." In other words, the latter statutory section does not impose the requirement of obtaining a certificate of origin or title at the time of delivery of the vehicle.
[1] Thus, these two statutes, in some aspects, are concerned with the same subject matter. When statutes are in pari materia, although apparently conflicting, they should, if possible, be construed in harmony with each other to give *374 effect to each. Lamar County Sch. Bd. of Lamar County v. Saul, 359 So.2d 350 (Miss. 1978); McCullen v. State ex rel. Alexander for Use of Hinds County, 217 Miss. 256, 63 So.2d 856 (1953); Greaves v. Hinds County, 166 Miss. 89, 145 So. 900 (1933). Several jurisdictions have encountered the same disputes arising from similar conflicting statutes, and those jurisdictions have reasoned that a good faith purchaser should prevail.
[2] Some of those courts have recognized that the intent and spirit of the title statutes would not be served in preventing the passage of ownership to a bona fide purchaser for value without notice. Medico Leasing Co. v. Smith, 457 P.2d 548 (Okl. 1969); Hento v. Melmer, 73 S.D. 455, 44 N.W.2d 212 (1950). The major purpose behind such title statutes is to facilitate the recovery of stolen cars, and to establish a source of information concerning the title and liens on motor vehicles for commercial entities. Nationwide Ins. Co. v. Bank of Forest, 368 So.2d 1273 (Miss. 1979). [431 So.2d at 927-928]
The court concluded:
In our considered opinion, the pertinent Mississippi title statute was never intended by the Legislature to harm an innocent bona fide purchaser. And, the purpose of that statute can still be achieved even though the "entrustment" statute is given prevalence. In this limited respect, the Commercial Code provision must prevail. Thus, it was not necessary for the purchaser to receive, at the time of delivery of the vehicle, the certificate of origin before title could pass to him. The sale was complete upon delivery. [431 So.2d at 928]
In Island v. Warkenthien, supra, a similar scenario to that at bar was presented. Seller turned his car over to an auto dealership authorizing the dealership to attempt to sell the car. Buyer purchased the car for cash and a trade-in, the dealership indicating that the title would be sent to the buyer's lending institution. Seller who had retained the title documents, never received the purchase price, the dealership filed for bankruptcy, and seller instituted an action to recover the car based upon the provisions of Iowa's automobile title statutes. The court stated:
Appellant [seller] is the party who set in motion the chain of events leading to the title dispute. Moreover, the spirit and intent of the title statutes, which is to prevent fraud through the sale of stolen cars, Hento v. Melmer, 73 S.D. 455, 44 N.W.2d 212 (1950), would not be served in a case involving a bona fide purchaser for value without notice. The Commercial Code provisions dealing with entrustment and buyers in the ordinary course of business are clearly applicable to the facts presented here. Therefore, using the rule of in pari materia, the logical result is to give effect to the Commercial Code provisions rather than the title statutes since the latter statutes were not meant to penalize good faith purchasers. By construing the statutes in this manner, both the title statutes and the Commercial Code provisions can be given effect without diminishing the effect of the other. [287 N.W.2d at 489]
*375 Although the facts in Godfrey v. Gilsdorf, supra, were a little different from those at bar, the philosophical underpinnings of the argument were similar. The court held:
[1] 1. The licensing and registration provisions of the vehicle code are essentially police regulations and strict compliance with them appears to be the prevailing view. State v. Glenn, 423 S.W.2d 770 (Mo. 1968). The underlying policy and purpose of that regulatory scheme are best promoted by such a view. It does not follow, however, that those purposes are subverted by the application of an estoppel theory to a business transaction falling within the entrustment provisions of the U.C.C.[1] As we see it, the relevant provisions of the two codes can exist side by side with meaning given to each and without doing violence to either, and we should so construe them. Bodine v. Stinson, 85 Nev. 657, 461 P.2d 868 (1969).
........
In summary, we find, as did the court below, that Godfrey entrusted his car to a merchant who deals in cars. The merchant was empowered to transfer Godfrey's rights to a buyer in the ordinary course of business and did so. We conclude that the principle of estoppel precludes Godfrey from asserting his later acquired title against Gilsdorf who purchased in good faith, for value and without notice of the then existing security interest of Commercial Credit Corporation. [476 P.2d at 6][3]
Likewise the court in Levin v. Nielsen, supra, made this relevant observation:
No court may recognize title in anyone save one who holds and proves a duly issued certificate of title, or manufacturer's or importer's certificate of origin.... But these restrictions do not preclude or nullify the effect of a purported warranty or guaranty of title. (citations omitted) We are not obliged to conclude, ipso facto, that no one else is entitled to have title transferred to himself, or that the General Assembly meant to require that automobile purchasers rely solely on a dealer's moral commitment to complete his part of the bargain. The Certificate of Title Act was adopted to protect innocent purchasers, and to allow the public to rely on duly issued evidence of title. It was not meant to, and does not prevent a court of equity from ordering that title be transferred if the holder has bound himself to do so, directly or through an agent. [306 N.E.2d at 179]
See also Coffman Truck Sales v. Sackley Cartage Co. Inc., 58 Ill. App.3d 68, 15 Ill.Dec. 554, 373 N.E.2d 1026 (App.Ct. 1978); Medico Leasing Company v. Ralph W. Smith, 457 P.2d 548 *376 (Okl. 1969); Humphrey Cadillac and Oldsmobile Co., Inc. v. Sinard, 85 Ill. App.2d 64, 229 N.E.2d 365 (App.Ct. 1967).
In sum, by applying well established rules of statutory harmonization, in conformity with the reasoning of out of state cases directly on point, I have concluded that as between the two innocent parties in this action, the loss must fall on the seller pursuant to N.J.S.A. 12A:2-403(2) and (3).
NOTES
[1] Watros has through the present time kept the automobile insured and registered.
[2] That statute describes a buyer in the ordinary course of business as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind.... `Buying' may be for cash or by exchange of other property...." Watros has not argued that Shannon falls outside that definition except by oblique reference, that is, that Shannon was on notice of the ownership rights asserted by Watros, because he did not obtain title in hand. As has been noted above, the provisions of N.J.A.C. 13:21-11.1 et seq. completely undercut that view.
[3] In my estimation, equitable estoppel is of a piece with the entrustment provision and not an additional applicable principle here.