CHERRY CREEK DODGE, INC., a Colorado corporation, Appellant (Plaintiff),

v.

Bruce CARTER and Peggy Carter, husband and wife, Appellees (Defendants).

No. 86–195.

Supreme Court of Wyoming.

March 9, 1987.

who were the final purchasers of the vehicle. Cherry Creek Dodge first sold the vehicle to Executive Leasing Ltd. (Executive), a Colorado leasing and vehicle dealership, which resold and delivered the vehicle to the Carters in Evanston, Wyoming. The Carters paid Executive, but Executive failed to honor their draft to Cherry Creek Dodge which had retained the manufacturer's statement of origin (MSO). The trial court granted summary judgment to the Carters. We affirm.

At issue is the priority between a retail buyer who in good faith has paid his purchase price, and a supplier who is unpaid when the dealer's payment draft was dishonored. The case is complicated by the fact that the supplier issued no vehicle title when retaining the MSO received from the dealer. Only a bill of sale and a written promise of title to be provided "in a few days" were furnished to the retail buyer upon vehicle delivery. Conflict-of-law and Uniform Commercial Code issues result.

John A. Thomas, of Phillips, Lancaster and Thomas, P.C., Evanston, and Blair J. Trautwein, of Hathaway, Speight and Kunz, Cheyenne, for appellant (plaintiff).

Kay Snider Coffman, Cheyenne, for appellees (defendants).

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Appellant, Cherry Creek Dodge, Inc., a Colorado new-car dealership, sued to replevy a vehicle from appellees, the Carters,

### FACTS

Bruce and Peggy Carter, appellees, were members of the United Consumer Club of Salt Lake City, Utah. Through that organization, contact was made with Executive, of Denver, Colorado, and negotiations were pursued by telephone for the purchase of a 1985 Dodge Ramcharger.

Executive consummated the transaction by delivering the new 1985 Dodge to the Carters' residence in Evanston on July 19, 1985, with a signed purchase order and handwritten bill of sale and receipt of a cashier's check for the sale price of $13,060.35. Executive had, on the same day, purchased the vehicle from Cherry Creek Dodge in Denver, by delivery of a bank draft for purchase payment. Cherry Creek Dodge had retained the MSO until satisfaction of outstanding manufacturer sales financing and the purchase draft cleared, which it never did.

Cherry Creek Dodge filed this replevin action in Uinta County, Wyoming to reclaim the vehicle. Essential facts were the

subjects of stipulation, affidavits of Carters, and a minimally informative deposition of a Cherry Creek Dodge employee. It was established by deposition comment of its employee that Cherry Creek Dodge knew that the vehicle was acquired from them by Executive for possible resale: "They contacted me by phone and expressed that they had a customer for such and such a vehicle [to lease it or resell it]."

The trial court's statement of facts, approved by the parties, included:

"1. Cherry Creek Dodge is engaged in the business of selling new motor vehicles. Its principal place of business is the State of Colorado.

"2. At all times pertinent to this action, Executive Leasing Ltd. was engaged in the business of leasing and selling motor vehicles. Its principal place of business was in Colorado.

"3. On July 18, 1985 by a telephone call, Executive Leasing agreed to sell a 1985 Dodge Ramcharger to Bruce Carter and Peggy Carter, residents of the State of Wyoming.

"4. Thereafter, on July 19, 1985, in the normal course of its business, Cherry Creek Dodge sold and delivered a new 1985 Dodge Ramcharger to Executive Leasing.

"5. In return for delivery of the vehicle Executive Leasing gave to Cherry Creek Dodge a bank draft. The Manufacturer's Statement of Origin (MSO) which was subject to a lien in favor of Chrysler Credit Corporation, was retained by Cherry Creek Dodge pending receipt of payment of the draft.

"6. On the same day, July 19, 1985, Executive Leasing brought the vehicle to Wyoming and delivered it to Mr. and Mrs. Carter in Evanston. The Carters gave Executive Leasing a cashier's check in full payment for the vehicle. In return, Executive Leasing gave to the Carters a handwritten bill of sale, together with an oral promise to send the title in a few days.

"7. On July 23, 1985, Cherry Creek Dodge paid off Chrysler Credit Corpora-

tion. However, the draft of Executive Leasing was dishonored; and Executive Leasing has never paid Cherry Creek Dodge for the vehicle.

"8. Cherry Creek Dodge has never filed any document contemplated by the Uniform Commercial Code of the State of Colorado or the Uniform Commercial Code of the State of Wyoming.

"9. Both Cherry Creek Dodge and the Carters now claim the right to title and possession of the vehicle."

The facts are not contested, and consequently summary judgment disposition was proper as a matter of law. *Hensley v. Williams, Wyo.,* 726 P.2d 90 (1986); *Cordova v. Gosar, Wyo.,* 719 P.2d 625 (1986).

The initial issue is a question of conflict of law: do we apply the majority rule followed in Wyoming or the minority rule adopted in Colorado to determine the priority between a supplier who has retained the vehicle title document and a retail purchaser for value without notice?

## CONFLICT OF LAW

Executive obtained possession of the vehicle from Cherry Creek Dodge for resale. We find no issue raised about resale possibilities out of Colorado with evidence about the initial sale not defining any restriction on delivery area.

■ Consequently, with legal possession delivered by the sales transaction, Cherry Creek Dodge subjected itself to the U.C.C. in effect here when the resale did occur in Wyoming. Public policy and case precedent require this state to apply Wyoming law if the transaction between Executive and the Carters was a Wyoming sale as a conflict-of-law decision.

Under § 34–21–105, W.S.1977 (U.C.C. § 1–105), where the transaction bears a reasonable relation to more than one state, and the parties have not agreed on which state law applies, the Wyoming statutes embodying the U.C.C. apply to transactions bearing an appropriate relation to Wyoming. In *Park County Implement Co. v. Craig, Wyo.,* 397 P.2d 800 (1964), this court

followed that choice of law statute in a similar factual situation by concluding that the Wyoming provisions of the U.C.C. applied. In that case, the vehicle had been ordered in Wyoming and was picked up in Montana. An MSO was not immediately available, and the vehicle was brought to Cody, Wyoming, where the buyer was in the process of converting the vehicle for use when it was substantially destroyed in an accident. The ultimate issue in that case was risk of loss, and the court held that the sale was a Wyoming transaction under the U.C.C., and that under those provisions a completed sale had occurred in Wyoming without regard for non-delivery of the certificate of title by the Montana dealership. *Park County Implement Co. v. Craig,* supra, 397 P.2d at 802–803.

In this case, negotiations, delivery and payment occurred in Wyoming, affording a reasonable forum relationship. Restatement (Second) Conflict of Laws § 188. Consequently, this was a Wyoming sale, with legal attributes now to be determined under the U.C.C. *existent here,* for the purpose of determining priority of interest in the vehicle. Cherry Creek Dodge, in selling and releasing possession of the vehicle to Executive for resale, subjected itself to the law of the state where the vehicle might then be taken for resale. We therefore apply Wyoming substantive law because it is the law of the state bearing an appropriate relation to the totality of the transaction. *Park County Implement Co. v. Craig,* supra; § 34–21–105, W.S.1977 (U.C.C. § 1–105).[1]

## PRIORITY UNDER THE UNIFORM COMMERCIAL CODE

■ The priority issue has also been settled for this jurisdiction by *Park County Implement Co. v. Craig,* supra. We do not now elect to join the minority view followed only by Colorado and possibly Missouri, but confirm our adherence to the majority rule that without regard to the transfer of title, the rights of the innocent third-party purchaser are to be protected over those of the unpaid supplier. We find significant support for this principle in an exhaustive discussion authored by Epling, *Priorities Disputes in Motor Vehicles and in Other Certificated Goods,* 41 Bus.Law., February 1983, at 361.

The U.C.C. provisions applicable to the transaction are § 34–21–248, W.S.1977 (U.C.C. § 2–403):

"(a) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though:

\* \* \* \* \* \*

"(ii) The delivery was in exchange for a check which is later dishonored; \* \*

\* \* \* \* \* \*

"(b) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."

and § 34–21–936(a), W.S.1977, 1986 Cum. Supp. (U.C.C. § 9–307):

"(a) A buyer in ordinary course of business (W.S. 34–21–120(a)(ix) (1–201(9)) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even

---

1. In trial court presentation, the case was alternatively defined as an issue of interpretation of Colorado Motor Vehicle—U.C.C. issues, or as a conflict-of-law case. The district court decided the case by resolution under Colorado law, and the briefs to this court similarly relied on the application of Colorado law. We find that the situs of the ultimate sale is the dispositive principle, and need not consider the conflicting contentions about the interpretation of the Colorado law. *Bryant v. Hornbuckle,* Wyo., 728 P.2d 1132 (1986); *Colorado National Bank v. Miles,* Wyo., 711 P.2d 390 (1985).

though the buyer knows of its existence."

■ In this case, Executive was empowered to transfer good title to a good-faith purchaser for value, despite the fact that Executive obtained the vehicle in exchange for a draft which was later dishonored. Furthermore, Cherry Creek Dodge entrusted possession of the vehicle to Executive, a merchant dealing in vehicle sales, which gave Executive the power to transfer all of Cherry Creek Dodge's rights to a buyer in the ordinary course of business. The Carters were such buyers.

We are also persuaded by the logic of the Mississippi Supreme Court in *Atwood Chevrolet-Olds, Inc. v. Aberdeen Municipal School District, Miss.,* 431 So.2d 926 (1983). In that case, Atwood purchased the bus chassis out of state from General Motors; Brantley purchased it from Atwood, out of state, and resold it to Aberdeen School District in state, with delivery of possession upon receipt of payment. Upon nonpayment from Brantley, Atwood filed a replevin action against the school district. The court held in favor of the school district as the innocent purchaser, and determined that the provisions of the title statutes would not supersede the U.C.C. The court noted that the title statutes in some aspects are concerned with the same subject as the U.C.C., and said:

"* * * Several jurisdictions have encountered the same disputes arising from similar conflicting statutes, and those jurisdictions have reasoned that a good faith purchaser should prevail.

"Some of those courts have recognized that the intent and spirit of the title statutes would not be served in preventing the passage of ownership to a bona fide purchaser for value without notice. * * *

"Another reason for protecting the innocent purchaser is the observation that the owner or manufacturer was the party who set in motion the chain of events leading to the title dispute by entrusting the vehicle to an insolvent dealer." 431 So.2d at 928.

The article cited supra is helpful in understanding the conflict between the U.C.C. and title statutes:

"The vast majority of states, however, seem to place primacy on the entrustment doctrine as enunciated in U.C.C. section 2–403(2), which provides that 'entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entrustor to a buyer in the ordinary course of business.' These courts generally have held that one who pays cash or gives other value for the vehicle to the dealer does not lose his good-faith status by the absence of receipt of the title certificate or MSO at the time of purchase. Other states following this majority rule and reaching this result are Mississippi [*Atwood Chevrolet-Olds, Inc. v. Aberdeen Municipal School District,* supra], New Jersey [*Shannon v. Snedeker,* 192 N.J.Super. 366, 470 A.2d 25 (1983); *Martin v. Nager,* 192 N.J.Super. 189, 469 A.2d 519 (1983)], New York [*Sheridan Suzuki, Inc. v. Caruso Auto Sales, Inc.,* 110 Misc.2d 823, 442 N.Y. S.2d 957 (1981)], Ohio [*Fuqua Homes, Inc. v. Evanston Bldg. & Loan Co.,* 52 Ohio App.2d 399, 370 N.E.2d 780 (1977)], South Dakota [*Island v. Warkenthien,* S.D., 287 N.W.2d 487 (1980)], Tennessee [*In re Tom Woods Used Cars, Inc.,* 21 Bankr. 560 (E.D.Tenn.1982)], and Washington [*Williams v. Western Surety Co.,* 6 Wash.App. 300, 492 P.2d 596 (1972)]." Epling, supra, 41 Bus.Law. at 368.

Within this singularly litigated subject, we agree with the majority rule and follow the plain language of the Wyoming Uniform Commercial Code. See *United States v. Wyoming National Bank of Casper,* 505 F.2d 1064 (10th Cir.1974); *Price v. Universal C.I.T. Credit Corp.,* 102 Ariz. 227, 427 P.2d 919 (1967); Murray, *Commercial Law,* 30 U.Miami L.Rev. 63 at 101, (1975); Townsend, *The Case of the Mysterious Accessory,* 16 Law & Contemp.Probs. 197 (1951).

Bruce and Peggy Carter were buyers in the ordinary course of the business rela-

tionship transacted with Executive. Consequently, the entrusting activity of Cherry Creek Dodge in releasing the vehicle to Executive conferred to these buyers the rights afforded by Wyoming statutes, to take title free and clear of Cherry Creek Dodge's residual claims against Executive.

Affirmed.