STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND MARK A. KWASNIESKI, APPELLEES, V. RANCE LYNN FITZGERALD AND MICHAEL MASSEY, APPELLANTS, AND AMERICAN FAMILY INSURANCE GROUP, APPELLEE.

334 N.W.2d 168

Filed May 6, 1983. No. 81-914.

Timothy J. Pugh of Boland, Mullin & Walsh, for appellant Fitzgerald.

Cynthia G. Irmer of Matthews, Cannon & Riedmann, P.C., for appellant Massey.

Donald D. Schneider of Ray C. Simmons, P.C., for appellees State Farm and Kwasnieski.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, and HASTINGS, JJ., and BRODKEY, J., Retired.

KRIVOSHA, C.J.

This appeal presents to the court what appears to be a case of first impression. The question presented is, When does the seller of an automobile cease to be its owner within the meaning of a standard automobile insurance policy which provides coverage to both the named insured and those operating the vehicle with the named insured's permission? The trial court, concluding that the question was one of fact, submitted the issue to the jury, which found for the appellee State Farm Mutual Automobile Insurance Company (State Farm). For reasons more particularly set out in this opinion, we believe that the question in this case was one of law and not of fact and should have been decided against State

Farm. We must therefore reverse the decision of the trial court.

Appellee State Farm filed a declaratory judgment action naming itself and its insured, Mark A. Kwasnieski, as plaintiffs. The defendants were Rance Lynn Fitzgerald and Fitzgerald's automobile carrier, American Family Insurance Group (American Family). Also named as a party defendant was Michael Massey, who was seriously injured as the result of an accident involving Fitzgerald who, at the time of the accident, was driving a pickup truck he was purchasing from Kwasnieski. The record establishes without conflict that on Wednesday, October 4, 1978, Kwasnieski, who was the owner of a certain 1975 Chevrolet pickup truck insured by State Farm, agreed to sell the pickup to Fitzgerald for $5,500. On Friday, October 6, 1978, Fitzgerald went to Kwasnieski's home and gave to Kwasnieski a two-party bank check. The two filled out and signed a sales tax certificate, an odometer certificate, and the back of the certificate of title to the pickup truck. Both Fitzgerald and Kwasnieski testified that they realized their signatures needed to be notarized but that no notary was present. Instead, both agreed that Kwasnieski's father could take the certificate of title the following Monday to a notary public with whom he worked. The parties agreed that Fitzgerald would pick up the certificate of title on Monday night after it had been notarized. After the two signed the certificate of title they left it on a table in the Kwasnieski home. Later that evening Kwasnieski and his father put it on a shelf where they normally place the mail. There is no testimony about handing the title to the father or to Fitzgerald. Kwasnieski testified that after Fitzgerald left with the truck, Kwasnieski still had the registration and certificate of title in his home and that both were accessible to him.

After the documents were signed and the check exchanged, Kwasnieski handed the keys to the

pickup to Fitzgerald and said, "Here you go." Nothing was said by either party about giving Fitzgerald permission to drive the pickup or about restricting the scope of his use.

Late Saturday night, October 7, 1978, Fitzgerald, while driving the pickup truck, was involved in an accident in which Massey was injured. The record discloses that at the time of the accident Fitzgerald and the pickup truck were covered by an insurance policy issued by American Family, which Fitzgerald had procured before he went to the Kwasnieski home.

On Monday morning, October 9, 1978, Kwasnieski's father took the title certificate to his office where it was notarized. That same morning, Kwasnieski called his State Farm agent and told him to cancel his policy of insurance retroactive to 12:01 a.m., Saturday, October 7. The certificate of title was actually picked up by Fitzgerald on Tuesday night, October 10, 1978. Massey subsequently filed suit against Fitzgerald, and Fitzgerald or American Family asked State Farm to defend the suit, but State Farm refused. The declaratory judgment action was then brought by State Farm for the purpose of determining whether State Farm's coverage applied to the accident and whether State Farm was under any obligation to defend.

As we have already indicated, the trial court, concluding that the question of ownership was a question of fact, submitted to the jury special findings. The jury was requested to make two findings. The first question submitted was: "Who was the owner of the pickup at the time of the accident between Fitzgerald and Massey?" A second question was submitted to the jury regarding whether the vehicle was being driven by Fitzgerald with permission from Kwasnieski. Because, however, the jury found that Fitzgerald was the owner of the vehicle at the time of the accident, the jury did not address the second question.

As we have already indicated, this appears to be a question of first impression in this jurisdiction, and, while logic and reason might compel one to reach the same conclusions reached by both the trial court and the jury, it appears that the statutes and case law of the State of Nebraska compel us to reach a contrary conclusion.

The State Farm policy is a standard form automobile policy and provides that it will "pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of (A) *bodily injury* sustained by other *persons*, and (B) *property damage*, caused by accident arising out of the ownership . . . of the *owned motor vehicle*; and to defend . . . any suit against the *insured* alleging such *bodily injury* or *property damage* . . . ." The policy defines the insured to be "the named insured" and "any other *person* using the *owned motor vehicle*, PROVIDED THE OPERATION AND THE ACTUAL USE OF SUCH VEHICLE ARE WITH THE PERMISSION OF THE NAMED INSURED OR SUCH SPOUSE AND ARE WITHIN THE SCOPE OF SUCH PERMISSION . . . ." The provisions of the American Family insurance policy owned by Fitzgerald are identical to the State Farm policy. The State Farm policy further provides: "The definition of *insured* does not apply to Use of Non-Owned Automobiles."

State Farm argues that the pickup truck was not owned by its insured, Kwasnieski, at the time of the accident on Saturday evening and therefore the coverage of the policy does not apply. To answer that question, however, we must look beyond the terms of the policy and examine the laws in effect, which form a part of the policy as if they were expressly referred to and incorporated in the policy. See *Turpin v. Standard Reliance Ins. Co.*, 169 Neb. 233, 99 N.W.2d 26 (1959).

Unless it can be said as a matter of law that the attempt by Kwasnieski to transfer title to Fitzgerald

on Friday, October 6, 1978, was ineffective, it seems clear that the parties intended ownership to transfer. We are afraid that the laws of the State of Nebraska, as written and as previously interpreted by this court, prevented the transfer of ownership from taking place until a duly executed and properly notarized certificate of title was delivered by Kwasnieski to Fitzgerald. Neb. Rev. Stat. § 60-105(1) (Reissue 1978) provides in part as follows: "No person . . . acquiring a motor vehicle . . . from the owner thereof . . . shall acquire *any right, title, claim, or interest* in or to such motor vehicle . . . until he shall have had delivered to him physical possession of such motor vehicle . . . and a certificate of title . . . duly executed in accordance with the provisions of this act . . . . No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle . . . sold or disposed of . . . unless there is compliance with this section." (Emphasis supplied.) The form which the certificate of title must take is provided by statute in Neb. Rev. Stat. § 60-114 (Reissue 1978), and notarization of the signatures is one of the requirements. Reading § 60-114 together with § 60-105, it is clear that a "duly executed" certificate of title requires the seller's signature to be notarized and that absent such notarization the document has not been "duly executed." See *Loyal's Auto Exchange, Inc. v. Munch*, 153 Neb. 628, 45 N.W.2d 913 (1951). It must follow, therefore, that a purchaser who receives possession of an automobile without also obtaining a certificate of title properly notarized and duly executed in accordance with the statutes then in effect acquires no "right, title, claim, or interest in or to" a motor vehicle, see, *First Nat. Bank & Trust Co. v. Ohio Cas. Ins. Co.*, 196 Neb. 595, 244 N.W.2d 209 (1976), and *Loyal's Auto Exchange, Inc. v. Munch, supra*, and does not thereby become the owner of the vehicle in question.

State Farm argues that a certificate of title is not

conclusive as to the matter of ownership and evidence may be offered to rebut the presumption. In support of its position it cites to us cases such as *Weiss v. Union Ins. Co.*, 202 Neb. 469, 276 N.W.2d 88 (1979), and *First Nat. Bank & Trust Co. v. Ohio Cas. Ins. Co.*, *supra*. It is true that in both the *Weiss* case and in the *First Nat. Bank* case, as well as others, we have held that the certificate of title is not in itself *conclusive* of ownership. Evidence may be introduced to show that even though the certificate of title may be in a particular party, it is the intention of the parties that title should not yet have passed to that party. *Weiss*, *supra*. That, however, is not the situation in the instant case. What we have said previously is that the fact that an automobile may be titled in an individual does not conclusively establish that such individual *is* the owner of the vehicle, and evidence may be introduced to show a contrary intent on the part of the parties. While it may be true that a certificate of title is not conclusive evidence of ownership, it is likewise true that absent a duly executed certificate of title, ownership may not be established. This is the reason for our statement in *Weiss v. Union Ins. Co.*, *supra* at 473, 276 N.W.2d at 92, when we said: ''Union takes the position that the mere signing of the above statements under oath by the buyer and the seller constitutes 'delivery' of the executed certificate of title regardless of the intent of the parties to the sale. This may be the rule when an innocent third party has relied on a duly executed certificate of title to his detriment. Garbark v. Newman, 155 Neb. 188, 51 N.W.2d 315. In the absence of such circumstances, this court has consistently held that, while the execution of the certificate of title is the exclusive method of conveying title to a motor vehicle, the certificate is not in itself conclusive of ownership.''

One may argue that such a result is too strict an interpretation of the certificate of title act. In *Loyal's Auto Exchange, Inc. v. Munch*, *supra* at

633-34, 45 N.W.2d at 918, we quoted with approval from the case of *Crawford Finance Co. v. Derby*, 63 Ohio App. 50, 25 N.E.2d 306 (1939), wherein it was said: " 'On the other hand, from the whole scheme of the Certificate of Title Act, especially the sections quoted above, it is apparent that the Legislature intended to set up one and only one method by which liens on or titles to a motor vehicle could be acquired.' " Because the Ohio act is identical to the Nebraska act we can conclude that the Nebraska Legislature likewise intended to set up one and only one method by which titles to a motor vehicle could be acquired. The language of the statute is clear beyond question. That is undoubtedly the reason why, in *Loyal's Auto Exchange, Inc. v. Munch, supra* at 638, 45 N.W.2d at 920, we said: "A purchaser who receives possession of an automobile without obtaining the certificate of title thereto, as required by our statute, acquires no title or ownership therein."

The significance of the certificate of title was examined by us in *Wolfson Car Leasing Co., Inc. v. Weberg*, 200 Neb. 420, 425, 264 N.W.2d 178, 182 (1978), where we said: "The passage of title of the automobile is so inherent in the transfer of the vehicle we cannot divorce the question of plaintiff's negligence from the Certificate of Title Act. The evidence is clear that Harry Wolfson, and not Silliman, had control of the certificates of title. Since no legal ownership is acquired without a duly notarized certificate and Wolfson retained such control, we cannot say from the record that Wolfson was negligent and therefore responsible for defendants' losses."

We are simply not at liberty to ignore the provisions of § 60-105, but, rather, we are obligated to give all of the words their plain and ordinary meaning in order to determine the legislative will. See *Pettigrew v. Home Ins. Co.*, 191 Neb. 312, 214 N.W.2d 920 (1974). In light of the statute we must conclude that when the Legislature provided that no person shall acquire any right, title, claim, or interest in or to a

motor vehicle until he shall have delivered to him a certificate of title duly executed and that absent such delivery no court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to such motor vehicle, the Legislature specifically meant just that. To hold otherwise would be to ignore the plain meaning of the statute, a practice we should not follow.

In the instant case there is no dispute regarding the evidence. The parties agree that there is no evidence which would support the idea that the parties intended that the instrument should take effect on Friday evening. Both Fitzgerald and Kwasnieski testified that they agreed on Friday night that the tax certificate would have to serve as Fitzgerald's proof of title until the certificate was properly notarized and delivered the following Monday. The parties agree that the purported notarization did not occur until the following Monday. Also, no evidence exists which would support a finding that the certificate was delivered Friday night. The question as to where legal title and therefore ownership resided on Saturday evening was a matter of law and not a question of fact. The court should have properly directed a verdict on that issue in favor of Fitzgerald and against State Farm and Kwasnieski, when requested by Fitzgerald.

Furthermore, under the facts in this case, the court should have found as a matter of law that because Kwasnieski was still the legal owner of the vehicle, Fitzgerald of necessity was operating the vehicle with Kwasnieski's permission at the time of the accident. In *Turpin v. Standard Reliance Ins. Co.*, 169 Neb. 233, 99 N.W.2d 26 (1959), we were asked to declare the rights of various parties under an omnibus clause identical to the clauses involved in this case. In *Turpin* the seller and named insured was the owner of a car for which he was still paying off a purchase money loan. When the seller went into the Marine Corps, he told Turpin that he

could drive the car while the seller was in the Marine Corps if Turpin would continue to make the payments. Turpin then had an accident with the vehicle. The certificate of title was never assigned to Turpin. In addressing the issue of "permission" we cited with approval the case of *Brewer v. DeCant*, 167 Ohio St. 411, 149 N.E.2d 166 (1958), saying at 248, 99 N.W.2d at 35: " 'Under the Ohio Certificate of Title Act, a change in ownership of an automobile is not consummated until a certificate of title is issued in the name of the purchaser. * * * Where a purchaser contracts to buy an automobile and takes possession thereof from an automobile dealer and uses the automobile, such use is a use with the permission of the dealer until such time as a certificate of title thereto is issued to the purchaser.' '" The court, assuming that the parties had contracted for the sale of the car, held that the buyer's possession and use was with the seller's permission. Here, Kwasnieski was still the legal titleholder to the vehicle until the certificate of title was duly executed and delivered to Fitzgerald. Kwasnieski as owner had the right to refuse to deliver the vehicle to Fitzgerald. By delivering the vehicle to Fitzgerald before delivering title, Kwasnieski in effect granted to Fitzgerald permission to drive the motor vehicle. No other conclusion can be reached. For other jurisdictions reaching similar conclusions see, *Garlick v. McFarland*, 159 Ohio St. 539, 113 N.E.2d 92 (1953), *Maryland Cas. Co. v. American Family Insurance Group*, 199 Kan. 373, 429 P.2d 931 (1967), and *Harbor Ins. Co. v. Paulson*, 135 Cal. App. 2d 22, 286 P.2d 870 (1955).

Under the evidence in this case, it must be found that at the time of the accident in question Kwasnieski was still the owner of the pickup truck and Fitzgerald was operating it with his permission. Therefore, the provisions of the State Farm policy apply.

The decision of the trial court is therefore re-

versed and the cause remanded with directions for the trial court to hold further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., concurs in the result only.

WHITE, J., participating on briefs.