DUGDALE OF NEBRASKA, INC., A MISSOURI CORPORATION, APPELLANT, V. FIRST STATE BANK, GOTHENBURG, NEBRASKA, A NEBRASKA BANKING CORPORATION, APPELLEE.

420 N.W.2d 273

Filed March 4, 1988.    No. 86-279.

Scott H. Trusdale of Trusdale & Trusdale, P.C., for appellant.

Richard G. Kopf of Cook, Kopf & Doyle, P.C., for appellee.

Andrew E. Grimm of Dwyer, Pohren, Wood, Heavey & Grimm, for amicus curiae Ford Motor Credit Company.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal by the plaintiff, Dugdale of Nebraska, Inc. (Dugdale), from a decision of the district court for Dawson County. Dugdale brought an action seeking a declaratory judgment as to its ownership rights to a 1985 Ford LTD Crown Victoria. Dugdale claimed ownership rights by virtue of having paid good and valuable consideration to Vannier Ford, Inc., and having taken possession of the vehicle from Vannier Ford. The defendant, First State Bank, cross-petitioned, claiming ownership of the vehicle by virtue of its possession of the manufacturer's certificate of origin and, subsequently, possession of the certificate of title to the vehicle. The cross-petition also sought declaratory relief. The case was tried upon stipulated facts.

Roger Swenson is the vice president in charge of operations and manager of the beef processing plant owned by Dugdale, located in Norfolk, Nebraska. In the 9 years prior to this lawsuit, Swenson purchased nearly 100 vehicles for Dugdale from Vannier Ford. On one previous occasion Vannier Ford had been a few days late in delivering a certificate of origin for a vehicle purchased by Swenson.

On March 11, 1985, Dugdale purchased from Vannier Ford a 1985 Ford LTD Crown Victoria. Dugdale traded a 1984 vehicle and paid $2,890 cash for the car. The car was one of six cars purchased that year to be used by Dugdale's cattle buyers.

On the day that the vehicle was delivered, Swenson was informed by Don Vannier, president of Vannier Ford, that the title papers to the vehicle had not yet been received. Thereafter, Swenson made numerous inquiries regarding the title papers. Each time he was told that the certificate of origin either had

not yet arrived or was lost, and various promises to deliver the papers were made. Swenson received no answer from Vannier Ford's business number in his final attempt to attain the certificate of origin. Shortly thereafter, approximately 2 months after taking delivery of the vehicle, First State Bank contacted Swenson and made demand for possession of the vehicle.

Approximately 5 days before selling the vehicle to Dugdale, Vannier Ford pledged the 1985 Ford LTD Crown Victoria to First State Bank as collateral for an $11,636.51 loan. Vannier Ford delivered the manufacturer's certificate of origin to the bank pursuant to the loan. The car was also subject to a previous security agreement with the bank. Vannier Ford defaulted on the loan, and the bank applied for and received a certificate of title, pursuant to Neb. Rev. Stat. § 60-111 (Reissue 1984).

It is apparent from these facts that Vannier Ford perpetrated fraud against both parties to this lawsuit. Vannier Ford falsely represented clear title in the sale to Dugdale and at the same time defrauded the bank by selling collateral pledged for a loan.

The district court found that the plaintiff, Dugdale, never acquired proper and legal title to the vehicle and, as such, could not claim ownership under Nebraska law. The court relied upon Neb. Rev. Stat. § 60-105 (Reissue 1984), which states in relevant part as follows:

> No person . . . acquiring a motor vehicle . . . shall acquire any right, title, claim, or interest in or to such motor vehicle . . . until he shall have had delivered to him physical possession of such motor vehicle . . . and a certificate of title or a manufacturer's or importer's certificate . . . . No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle . . . unless there is compliance with this section.

The court further found that ownership of the vehicle is vested in the defendant, First State Bank.

Since all of the facts were submitted by stipulation, we review this case as if trying it originally in order to determine whether the facts warranted the judgment. *State Farm Mut. Auto. Ins.*

*Co. v. Budd*, 185 Neb. 343, 175 N.W.2d 621 (1970).

The appellant presents six assignments of error, which can be summarized as follows: (1) Dugdale should have been free of the bank's security interest, since it was a buyer in the ordinary course of business, and § 60-105 should not have been applied to defeat that status on these facts; and (2) the bank failed to comply with Neb. U.C.C. § 9-403 (Cum. Supp. 1986) (security agreements) and § 60-111 (repossession) and therefore had no security interest or ownership interest in the vehicle.

In 1939 the Nebraska Legislature passed into law the certificate of title act. See Neb. Rev. Stat. §§ 60-101 et seq. (Reissue 1984). The act is very similar to the certificate of title act in Ohio and was adopted to protect vehicle owners, lien holders, and the public against fraud. *Securities Credit Corp. v. Pindell*, 153 Neb. 298, 44 N.W.2d 501 (1950). We have said that the certificate of title act is the exclusive means of transferring title, and a purchaser who takes possession of a motor vehicle without receiving a certificate of title acquires no ownership of the vehicle. *Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 406 N.W.2d 640 (1987); *State Farm Mut. Auto. Ins. Co. v. Royal Ins. Co.*, 222 Neb. 13, 382 N.W.2d 2 (1986); *State Farm Mut. Auto. Ins. Co. v. Fitzgerald*, 214 Neb. 226, 334 N.W.2d 168 (1983); *The Cornhusker Bank of Omaha v. McNamara*, 205 Neb. 504, 288 N.W.2d 287 (1980); *Weiss v. Union Ins. Co.*, 202 Neb. 469, 276 N.W.2d 88 (1979); *Wolfson Car Leasing Co., Inc. v. Weberg*, 200 Neb. 420, 264 N.W.2d 178 (1978); *First Nat. Bank & Trust Co. v. Ohio Cas. Ins. Co.*, 196 Neb. 595, 244 N.W.2d 209 (1976); *Forman v. Anderson*, 183 Neb. 715, 163 N.W.2d 894 (1969). None of these cases except *Boren* involved a claimant who was a buyer in the ordinary course of business, as defined by Neb. U.C.C. § 1-201(9) (Reissue 1980). Although the claimant in *Boren* was apparently a buyer in the ordinary course, that case did not involve an ownership dispute between a purchaser and a dealer's financier. As such, this is a case of first impression in Nebraska.

Within the limitations set forth in Neb. U.C.C. § 2-102 (Reissue 1980), the provisions of Neb. U.C.C. art. 2 (Reissue 1980) governing sales are applicable to the sale of a motor vehicle. See § 2-105(1). Section 2-312 provides that a seller

warrants that he will convey good title free from any security interest or lien or encumbrance of which the buyer has no actual knowledge. This warranty, which arises as a matter of law, can only be modified or excluded by specific language or by circumstances which put the buyer on notice that the seller's claim to title is limited or nonexistent. See § 2-312(2). In the contract between Vannier Ford and Dugdale there is no language which excludes or modifies the warranty of title, nor were the circumstances such that Dugdale had reason to know that Vannier Ford did not claim title. In fact, just the opposite is true. At the time of the contract for sale Vannier Ford represented, and continued to represent, to Dugdale that the certificate of origin would be delivered.

Section 2-403 provides as follows:

> (2) Any entrusting of possession of goods to a merchant for purposes of sale who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

> (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have [sic] been such as to be larcenous under the criminal law.

It was stipulated that Dwight Stubbs and Marion Tatum, each an officer and director of First State Bank, would have testified that no one from the bank authorized Vannier Ford to sell the vehicle. The record indicates, however, that the vehicle remained in the possession of Vannier Ford, a licensed dealer. Under § 2-403 the bank entrusted possession of the vehicle to Vannier Ford, and as such Vannier had the authority to transfer all of the bank's rights to a buyer in the ordinary course.

It was stipulated that Bill Brandt would have testified for the defendant that in his view Dugdale was not a purchaser in the ordinary course, since, as a matter of fact, it is not in the ordinary course of business to pay for a motor vehicle, accept delivery, but fail to obtain delivery of the manufacturer's certificate of origin. The phrase "buyer in the ordinary course

of business" is defined in § 1-201(9) as one who purchases in good faith and without knowledge that the sale is in violation of ownership rights or security interests of a third party. The seller must be in the business of selling goods of the type purchased. The test does not require uniform sophistication among buyers and does not attempt to measure each sale transaction against an industry standard or norm. It simply requires good faith and no knowledge that the sale is in violation of the rights of a third party. In this case good faith can be inferred from Dugdale's prior dealings with Vannier Ford and also from Dugdale's continuous efforts to obtain the certificate of origin. There was no evidence that Dugdale was aware of the bank's security interest. Vannier Ford, a licensed dealer, was certainly one in the business of selling motor vehicles. We therefore find that Dugdale was a buyer in the ordinary course of business. We further find that Vannier Ford warranted clear title under § 2-312 and that under § 2-403 First State Bank is bound by that warranty.

Vannier Ford not only warranted title under § 2-312, but was obligated to deliver such title under § 60-104. Selling a vehicle without delivering to the purchaser a certificate of title constitutes a Class III misdemeanor. § 60-117(5) and (7). While § 60-104 makes it unlawful for a purchaser to *receive* a title which does not contain the proper assignment of rights, it does not make it unlawful for a purchaser to acquire a motor vehicle without obtaining the certificate of title. It is evident, then, that the certificate of title act places primary emphasis on the seller's duty to deliver title.

The need to consider the Uniform Commercial Code provisions concurrently with the certificate of title act becomes obvious in light of the facts in this case. It is clear that both the title act and article 2 of the Uniform Commercial Code apply to the transaction here in question. Statutes which relate to the same subject, although enacted at different times, are in pari materia and should be construed together. *Northwest High School Dist. No. 82 v. Hessel*, 210 Neb. 219, 313 N.W.2d 656 (1981). The district court refused to recognize Dugdale's claim because § 60-105 requires both physical possession and a certificate of origin or title, and Dugdale failed to have the

latter. Yet, the court recognized the bank's claim even though it did not have physical possession of the vehicle. The bank was just as much a "person" acquiring or attempting to acquire a motor vehicle as was Dugdale. The result under this analysis is that no court could recognize either the bank's claim or Dugdale's claim. We must presume that the Legislature did not intend such an absurd result. *State v. Sinica*, 220 Neb. 792, 372 N.W.2d 445 (1985).

Courts in numerous other jurisdictions which have enacted the Uniform Commercial Code together with certificate of title acts similar to our own have addressed the identical question presented here. The overwhelming majority of those courts hold that a good-faith purchaser should prevail.

In *Levin v. Nielsen*, 37 Ohio App. 2d 29, 306 N.E.2d 173 (1973), the Ohio appellate court construed Ohio Rev. Code Ann. § 4505.04 (Anderson 1982) (identical in all relevant respects to § 60-105) together with the Uniform Commercial Code. The plaintiff in *Levin* purchased an automobile and later brought an action against the dealer's financier to compel delivery of title. The court found that the defendant had entrusted the vehicle to the dealer, and as such the defendant was obligated to deliver title to the plaintiff. Other cases in support of this view include *N. C. National Bank v. Robinson*, 78 N.C. App. 1, 336 S.E.2d 666 (1985); *Owensboro Nat. Bank v. Jenkins*, 173 Ga. App. 775, 328 S.E.2d 399 (1985); *Shannon v. Snedeker*, 192 N.J. Super. 366, 470 A.2d 25 (1983); *Whitworth v. Dodd*, 435 So. 2d 1305 (Ala. Civ. App. 1983); *Island v. Warkenthien*, 287 N.W.2d 487 (S.D. 1980); *American Lease Plans v. Jacobs Plumbing*, 274 S.C. 28, 260 S.E.2d 712 (1979); *Milnes v. General Elec. Credit Corp.*, 377 So. 2d 725 (Fla. App. 1979); *Commercial Nat. Bank v. Reedman Chevrolet*, 265 Pa. Super. 512, 402 A.2d 663 (1979); *Godfrey v. Gilsdorf*, 86 Nev. 714, 476 P.2d 3 (1970); *Medico Leasing Company v. Smith*, 457 P.2d 548 (Okla. 1969); *Com. Cred. Corp. v. Asso. Dis. Corp.*, 246 Ark. 118, 436 S.W.2d 809 (1969); and *Price v. Universal C. I. T. Credit Corporation*, 102 Ariz. 227, 427 P.2d 919 (1967).

We hold that a dealer having the authority to expose vehicles for sale in the ordinary course of business, pursuant to § 2-403,

binds his financier to deliver title to any vehicle so sold, whether or not the dealer remits the proceeds to his financier. A buyer in the ordinary course of business in this limited circumstance is not within the intended purview of § 60-105.

Based upon the foregoing, it is unnecessary for us to decide whether the bank had a valid security agreement or whether the bank properly attained a certificate of title to the vehicle. The decision of the district court is reversed and the cause is remanded with directions.

REVERSED AND REMANDED
WITH DIRECTIONS.