MELVIN O. WORLEY, APPELLEE, V. HENRY F. SCHAEFER II ET AL., APPELLEES, JOHN KRAFT CHEVROLET, INC., A FOREIGN CORPORATION, ET AL., APPELLANTS.

423 N.W.2d 748

Filed May 13, 1988.    No. 86-297.

P. Shawn McCann and Edward Noethe of Sodoro, Daly & Sodoro, for appellants.

Barbara Thielen of Taylor, Fabian, Thielen & Thielen, for appellee Melvin O. Worley.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

On Saturday, August 21, 1982, Melvin O. Worley and Henry F. Schaefer II were involved in an automobile-motorcycle accident. The car operated by Worley was a 1973 Plymouth station wagon which he had purchased from Paul Yates, doing business as Paul's Auto Sales (Yates), on August 18, 1982. On that day Worley paid cash for the car, took possession of it, and received a bill of sale for the car. Yates had purchased the car from John Kraft Chevrolet, Inc., on the day before Yates sold it to Worley. At the time of the accident John Kraft Chevrolet had not delivered a title to the vehicle to Yates, and, consequently, Yates had not delivered title to Worley.

Schaefer brought a tort action against Worley, seeking damages for injuries which were alleged to have been caused by Worley's negligence. Worley then filed an action for declaratory judgment to determine whether John Kraft Chevrolet, as holder of title to the automobile, and its insurer, American Alliance Insurance Company, were responsible for any judgment arising out of the Schaefer tort action. Ruling on Worley's motion for partial summary judgment, the district court determined that John Kraft Chevrolet was the owner of the vehicle at the time of the accident. After partial summary judgment was entered, Worley moved for summary judgment on the remaining issue of insurance coverage. The district court determined that Worley was covered under John Kraft Chevrolet's insurance policy and ordered American Alliance Insurance Company to provide a legal defense to Worley for the pending tort action between Schaefer and Worley. The

defendants American Alliance Insurance Company, a capital stock corporation of the Great American Insurance Companies, and its insured, John Kraft Chevrolet, have appealed to this court.

In *Dugdale of Nebraska v. First State Bank*, 227 Neb. 729, 732, 420 N.W.2d 273, 276 (1988), this court for the first time acknowledged that "the provisions of Neb. U.C.C. art. 2 (Reissue 1980) governing sales are applicable to the sale of a motor vehicle." Until *Dugdale*, cases involving motor vehicle sales disputes were resolved solely by application of the relevant, and sometimes not so relevant, provisions of the Nebraska certificate of title act. See, generally, *Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 406 N.W.2d 640 (1987); *The Cornhusker Bank of Omaha v. McNamara*, 205 Neb. 504, 288 N.W.2d 287 (1980); *Dyas v. Morris*, 194 Neb. 773, 235 N.W.2d 636 (1975). Thus, by recognizing that motor vehicles are "goods" within the definition provided by Neb. U.C.C. art. 2 (Reissue 1980), *Dugdale* set the stage for future cases which necessarily involve competing and conflicting clauses and provisions of the Uniform Commercial Code and the title act.

Facts similar to those in the present case were presented to this court in *State Farm Mut. Auto. Ins. Co. v. Fitzgerald*, 214 Neb. 226, 334 N.W.2d 168 (1983). In *Fitzgerald*, plaintiff Kwasnieski, an individual who was not a dealer in automobiles, agreed to sell his 1975 Chevrolet pickup truck to defendant Fitzgerald. The two signed the back of the certificate of title to the pickup, but agreed to leave the title with Kwasnieski so that his father could arrange to have the signatures notarized. Fitzgerald took possession of the truck and on the next day was involved in an accident in which a third party was injured. Kwasnieski and his insurer, State Farm Mutual Automobile Insurance Company, brought a declaratory judgment action against Fitzgerald and his insurer for determination of whether Kwasnieski's policy applied to the accident.

In *Fitzgerald*, we said:

Neb. Rev. Stat. § 60-105(1) (Reissue 1978) provides in part as follows: "No person . . . acquiring a motor vehicle . . . from the owner thereof . . . shall acquire *any right,*

*title, claim, or interest* in or to such motor vehicle . . . until he shall have had delivered to him physical possession of such motor vehicle . . . and a certificate of title . . . duly executed in accordance with the provisions of this act . . . . No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle . . . sold or disposed of . . . unless there is compliance with this section." (Emphasis supplied.) The form which the certificate of title must take is provided by statute in Neb. Rev. Stat. § 60-114 (Reissue 1978), and notarization of the signatures is one of the requirements. Reading § 60-114 together with § 60-105, it is clear that a "duly executed" certificate of title requires the seller's signature to be notarized and that absent such notarization the document has not been "duly executed." [Citation omitted.] It must follow, therefore, that a purchaser who receives possession of an automobile without also obtaining a certificate of title properly notarized and duly executed in accordance with the statutes then in effect acquires no "right, title, claim, or interest in or to" a motor vehicle [citations omitted], and does not thereby become the owner of the vehicle in question.

214 Neb. at 231, 334 N.W.2d at 171. The court held that at the time of the accident in question, Kwasnieski was still the owner of the pickup truck and that, as a matter of law, Fitzgerald was operating the truck with Kwasnieski's permission. The provisions of the seller's policy were therefore held to apply.

A similar result was reached in *Boren v. State Farm Mut. Auto. Ins. Co., supra.* The facts in *Boren* are similar to those in *Fitzgerald* except that in *Boren* the seller was a licensed dealer, Misle Chevrolet Company, and the two parties executed a purchase agreement. The significance of this fact will be discussed later in this opinion.

Although it is not clear from the record in this case, the district court apparently relied on *Fitzgerald* in concluding that John Kraft Chevrolet was the owner of the 1973 Plymouth station wagon at the time of the accident and in ruling that, as a matter of law, John Kraft Chevrolet permitted Worley to

operate the car. The appellants have asked this court to reexamine *Fitzgerald* and its progeny in light of the apparent conflict between § 2-401(2) and the passing of title requirements of the certificate of title act.

Section 2-401 provides that, in those instances not governed by other provisions of article 2 and as to which title is "material," "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . even though a document of title is to be delivered at a different time or place . . . ." The parties may, however, explicitly agree that title will pass otherwise. This provision represents a significant shift away from the prior role that "title" played in the transaction of goods. Article 2 "deals with the issues between seller and buyer in terms of step by step performance or non-performance under the contract for sale and not in terms of whether or not 'title' to the goods has passed." § 2-401, comment 1.

Appellants rely on a recent Montana Supreme Court case, *Safeco Ins. Co. v. Lapp*, ____ Mont. ____, 695 P.2d 1310 (1985), for the proposition that "as between the parties, and for purposes of determining insurance coverage, ownership of a motor vehicle should be governed by the Nebraska Uniform Commercial Code, and not by the Nebraska certificate of title act." Brief for Appellants at 7. In *Safeco*, the defendant Lapp purchased an automobile from Prospector Chevrolet. Before title to the automobile was transferred, Lapp was involved in a collision with another vehicle which killed the driver of the other vehicle. Safeco brought a declaratory judgment action to determine its rights and obligations under a garage liability policy that it issued to Prospector.

The lower court entered a judgment in favor of Safeco. On appeal Lapp asserted that legal title remained in Prospector because all of the steps required for transfer of title under the Montana certificate of title act were not completed. The Montana Supreme Court agreed that the motor vehicle statutes were relevant, but did not think they were determinative on the issue of ownership. The court noted that the Montana Legislature had recently deleted a provision in the motor vehicle code which required judicial invalidation of any motor vehicle

transfer when the parties have not fully complied with the statutory procedures. At the same time, new legislation setting forth the procedure to transfer and register motor vehicles was enacted. The new provisions are nondirective in that they require compliance by the parties, but do not explicitly spell out the effect on title if the parties fail to comply. The Montana court therefore felt it necessary to look to the Uniform Commercial Code for direction on the issue of ownership. The court cited Mont. Code Ann. § 30-2-401 (1987), that state's version of Nebraska's § 2-401, and then held as follows:

> Prospector Chevrolet, Inc. delivered the vehicle to Clive H. Lapp in July 1980. The sale was complete and Lapp became the owner of the vehicle. Lapp had the right to use or dispose of the automobile as he wished. Prospector had relinquished all its legal rights to the vehicle even though it still had the statutory duties relating to transfer of certificate of ownership. We hold the legal title to the automobile passed to Clive H. Lapp on the date of delivery.

_____ Mont. at _____, 695 P.2d at 1313.

Nebraska's title act is fundamentally different from Montana's title act in that it contains an invalidating provision, Neb. Rev. Stat. § 60-105 (Reissue 1984), much like the one Montana deleted. Recognizing this, it is necessary to rely instead on the relevant rules of statutory construction to resolve whatever conflict exists between §§ 2-401 and 60-105.

We must first determine the circumstances under which the two provisions actually conflict. In 1969, the Nebraska Legislature amended § 60-105, apparently as a direct response to the problem presented in this case. See Floor Debate, Committee on Public Works, L.B. 1174, 80th Leg. (May 1, 1969). To avoid the problem of the automobile dealers' continued liability after delivery of the vehicle but before passage of title, the Legislature added the following emphasized clause to § 60-105:

> No person, except as provided in section 60-110, acquiring a motor vehicle, commercial trailer, semitrailer, or cabin trailer from the owner thereof, whether such owner be a manufacturer, importer, dealer, or otherwise, shall acquire

any right, title, claim, or interest in or to such motor vehicle, commercial trailer, semitrailer, or cabin trailer until he shall have had delivered to him physical possession of such motor vehicle, commercial trailer, semitrailer, or cabin trailer and a certificate of title or a manufacturer's or importer's certificate duly executed in accordance with the provisions of this act, and with such assignments thereon as may be necessary to show title in the purchaser thereof *or an instrument in writing required by section 60-1417 . . . .*

(Emphasis supplied.) At the time of the events of this case, Neb. Rev. Stat. § 60-1417 (Reissue 1978) set forth all of the necessary information required for a valid bill of sale. The effect of this new clause is that proof of possession of a vehicle, together with a bill of sale which complies with § 60-1417, is sufficient to prove ownership of the vehicle. A duly executed and delivered certificate of title is no longer absolutely necessary to prove ownership under the title act.

Therefore, in the circumstance where the motor vehicle has been delivered and a valid bill of sale is executed, the title act and the U.C.C. do not conflict. Each dictates that the buyer is the owner of the vehicle. It is only when no bill of sale has been executed and no title has been properly executed and delivered that the title act and the U.C.C. actually conflict. In this situation legal ownership has passed to the buyer under the U.C.C., but remains with the seller under the title act.

Statutes in pari materia should be construed together so as to give force and effect to each whenever possible, but where plain and unavoidable repugnancy exists between the statutes, the latest statute will control. *Dugdale of Nebraska v. First State Bank,* 227 Neb. 729, 420 N.W.2d 273 (1988); *State v. Retzlaff,* 223 Neb. 811, 394 N.W.2d 295 (1986). On the facts in this case §§ 60-105 and 2-401 are in harmony with each other. Under § 2-401, when Yates delivered the vehicle to Worley, the sale was complete and Worley became the legal owner. Because the parties also executed a bill of sale in conformity with § 60-1417, Worley was likewise the owner under § 60-105. The 1969 amendment to § 60-105 casts doubt on this court's reliance on *State Farm Mut. Auto. Ins. Co. v. Fitzgerald,* 214 Neb. 226,

334 N.W.2d 168 (1983), in *Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 406 N.W.2d 640 (1987). If the bill of sale in *Boren* met the requirements of § 60-1417, then the result in *Boren* is erroneous.

Under the foregoing analysis the continuing validity of this court's decisions in *State Farm Mut. Auto. Ins. Co. v. Royal Ins. Co.*, 222 Neb. 13, 382 N.W.2d 2 (1986), *State Farm Mut. Auto. Ins. Co. v. Fitzgerald, supra*, and *Weiss v. Union Ins. Co.*, 202 Neb. 469, 276 N.W.2d 88 (1979), is questionable. In these cases it appears that no bill of sale was executed. In this situation the U.C.C. and the title act clearly conflict. The title act places legal ownership with the seller, while the U.C.C. places such ownership with the buyer. Because the U.C.C. is the more recent statement of legislative intent, it should control on the issue of ownership at least for the purpose of tort law and liability insurance coverage.

The district court erred in relying on *Fitzgerald* because in that case no bill of sale in compliance with § 60-1417 was executed. In this case Worley was the owner of the vehicle under both the U.C.C. and the title act. The cause must be reversed and remanded with directions to enter an order in accordance with this opinion. Appellee's motion for attorney fees for this appeal pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1984) is denied.

REVERSED AND REMANDED WITH DIRECTIONS.