**In the Matter of ELLINGSON MOTORS, INC., Debtor.**

**GENERAL MOTORS ACCEPTANCE CORP., Plaintiff,**

v.

**FIRST NATIONAL BANK OF WAYNE and Ellingson Motors, Inc., Defendant.**

**Bankruptcy Nos. BK90–82292, A91–8122.**

United States Bankruptcy Court, D. Nebraska.

Nov. 22, 1991.

William Stanek, Omaha, Neb., for debtor.

James Mitchell, Omaha, Neb., for Bank.

T. Randall Wright and Joyce Dixon, Omaha, Neb., for GMAC.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on September 3, 1991, on the motion to dismiss filed by Ellingson Motors and First National Bank of Wayne. William Stanek of Omaha, Nebraska, appeared on behalf of the debtor. James Mitchell, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Nebraska, appeared on behalf of the Bank. T. Randall Wright and Joyce Dixon of Dixon & Dixon, P.C., Omaha, Nebraska, appeared on behalf of GMAC. This memorandum contains the findings of fact and conclusions of law required by Fed.R.Civ.P. 52 and Fed.Bankr.R. 7052.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

### Background

Ellingson Motors, Inc., filed a Chapter 11 petition on December 28, 1990. At that time, it was indebted to General Motors Acceptance Corporation (GMAC) in the sum of approximately $954,000.00. On the petition date, the debtor was also in debt to defendant, First National Bank of Wayne (Bank).

Early in the case, GMAC filed a motion for relief from the automatic stay alleging that it had a validly perfected security interest in new General Motors automobiles held as inventory by the debtor and in parts and equipment and other personal property. The Bank intervened in the contested matter and made a convincing argument that there might be some problem with the extent and/or the validity of the lien claimed by GMAC. The Bank also claimed to have a validly perfected security interest in used vehicles, parts, equipment, etc. No relief was granted.

GMAC then brought this adversary proceeding seeking a determination that it is a first priority secured creditor in collateral identified as "new and used motor vehicles, replacement parts, general intangibles, insurance proceeds, contract rights, chattel paper, accounts and assignment of accounts, whether now owned or hereafter acquired, and all proceeds therefrom (the 'collateral') pursuant to the wholesale security agreements dated June 10, 1976, and August 5, 1986."

Defendants each filed a motion to dismiss. Defendant Bank attached to the motion to dismiss certain affidavits, copies of security agreements and financing statements and materials from the Uniform Commercial Code division of the Nebraska Secretary of State concerning the record of filings with regard to the debtor. At the hearing on the motion to dismiss, GMAC presented evidence in the form of depositions and legislative history of certain Nebraska statutes.

The motion to dismiss was brought pursuant to Fed.R.Civ.P. 12(b) which is made applicable to adversary proceedings pursuant to Fed.Bankr.R. 7012. Fed.R.Civ.P. 12(b)(6) provides that a motion to dismiss for failure to state a claim upon which relief can be granted is converted to a motion for summary judgment and disposed of as provided in Fed.R.Civ.P. 56 if matters outside the pleading are presented to and not excluded by the Court. Therefore, the motion will be treated as a motion for summary judgment under Fed.R.Civ.P. 56. In ruling on such a motion, the Court must consider all facts in a light most favorable to the non-moving party and give that party the benefit of any reasonable inference arising from the facts. *Ford v. Dowd*, 931 F.2d 1286 (8th Cir.1991); *Budget Marketing, Inc., v. Centronics Corp.*, 927 F.2d 421 (8th Cir.1991); *United States*

*v. City of Columbia, Mo.,* 914 F.2d 151 (8th. Cir.1990).

A motion for summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c) applicable to this adversary proceeding by Fed.Bankr.R. 7056.

All references to the Uniform Commercial Code are to Nebraska Revised Statutes Uniform Commercial Code, hereafter U.C.C. § 9–___ unless otherwise noted.

### Findings of Fact and Conclusions of Law

#### I. Security Interest Perfection/Lapse

Ellingson Motors, Inc., is a licensed car dealership in the business of selling new and used vehicles from its inventory. In 1976, the debtor granted a security interest to GMAC in "new vehicles held for sale or lease and used vehicles acquired from manufacturers or distributors and held for sale or lease, and all vehicles of like kinds or types now owned or hereafter acquired from manufacturers, distributors or sellers by way of replacement, substitution, addition or otherwise, and all additions and accessions thereto and all proceeds of such vehicles, including insurance proceeds." The debtor granted a similar security interest in August of 1986 to GMAC. (See Exhibits A–1 and A–2 to the complaint.) GMAC filed a financing statement in the Office of the Wayne County, Nebraska, Clerk on August 19, 1977, which described collateral as: "motor vehicles, trailers, and semi-trailers, and accessories; and replacement parts for any of these; and general intangibles, contract rights, chattel papers, accounts and assignment accounts including but not limited to, those arising out of the sale or lease thereof, including rents receivable under leases and rental agreements." On April 5, 1982, GMAC filed a continuation statement in the Office of the Wayne County Clerk. On October 9, 1985, GMAC filed a continuation statement with

the Secretary of State. GMAC then filed a new financing statement covering the same property with the Secretary of State on December 4, 1986. GMAC again filed a continuation statement with the Secretary of State on May 5, 1987.

■ Although the financing statement purports to cover more and different types of collateral than the collateral identified in the security agreement, the extent of the GMAC security interest is limited to the identification of collateral in the security agreement itself. U.C.C. § 9–201.

On January 3, 1986, the Bank filed a financing statement with the Secretary of State which covered collateral, also included in the security agreement the debtor had signed, described as: "machinery, equipment, (including automotive equipment), furniture, fixtures, inventory, accounts, contract rights, chattel papers, all tangible and intangible personal debts, property whether now owned or hereafter acquired and all proceeds therefrom." The Bank filed a continuation statement with the Secretary of State on December 19, 1990.

The legal issue presented is whether or not the GMAC security interest perfected in 1977 lapsed in 1982 by failure to comply with the Nebraska statute in effect in 1982 and, if so, what is the relative priority between the Bank and GMAC resulting from their 1986 filings.

When GMAC filed its original financing statement in 1977, the proper filing location for an inventory or other personal property security interest was with the County Clerk. However, effective September 1, 1981, the Nebraska Legislature amended U.C.C. § 9–401 to provide that the proper place to file in order to perfect a security interest is in the Office of the Secretary of State. U.C.C. § 9–403 provided, both in 1977 and in 1982, that a filed financing statement is effective for a period of five years from the date of filing. However, the effectiveness of a filed financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse. U.C.C. § 9–403(2).

A continuation statement can be filed within six months prior to the expiration of the five-year period and, if timely filed, the effectiveness of the original financing statement is continued for five years after the last date to which the filing was effective. U.C.C. § 9–403(3).

 The Legislature provided a "savings section" for those security interests which were perfected by filing financing statements in the county, but which would need to be continued by filing with the Secretary of State. Neb.Rev.Stat.U.C.C. § 9–412 (Reissue 1980). That statute reads, in relevant part:

A filing which is made in the proper place in this state prior to September 1, 1981, continues to be effective even though under sections 9–401, and 9–410 to 9–412 the place of filing has been changed. The effectiveness of any financing statement or continuation statement filed prior to September 1, 1981, may be continued by a continuation statement as permitted by the Uniform Commercial Code, except that if sections 9–401, and 9–410 to 9–412 requires a filing in an office where there was no previous financing statement, a new financing statement shall be filed in that office. Such new financing statement may be filed within six months before the perfection of the security interest would otherwise lapse. Any such financing statement may be signed by either the debtor or the secured party. It must identify the original financing statement and any amendment or continuation thereof, state the office where and the date when each filing was made, and the filing number thereof.

GMAC did file a continuation statement with the Wayne County Clerk within six months of the expiration of the original financing statement. However, GMAC did not file a new financing statement with the Office of the Secretary of State within that six-month period. Therefore, pursuant to U.C.C. § 9–403(2), the effectiveness of the originally filed financing statement lapsed five years following its original filing. From and after August of 1982, the GMAC

security interest was unperfected by virtue of such lapse. Failure to file a financing statement or continuation statement in the proper location is fatal to perfection. *State Sav. Bank of Hornick v. Onawa State Bank*, 368 N.W.2d 161 at 165 (Iowa 1985). In that case, one creditor filed a financing statement in an improper place. However, the creditor with a competing security interest had knowledge of the contents of the financing statement, even though improperly filed, and, pursuant to the Iowa version of U.C.C. § 9–401(2), the financing statement was effective as against the creditor with knowledge of its contents.

When the original creditor who had improperly filed the financing statement also improperly filed a continuation statement, the effectiveness of the financing statement lapsed, even as against the creditor who had knowledge of the contents of the financing statement. The court stated, at page 165: "Unlike subsection 554.9401(2), which provides that a financing statement filed in an improper place will be effective against junior creditors having actual knowledge of the contents, subsection 554.-9403(2) does not create a specific exception for a continuation statement filed in an improper place. We conclude that filing a continuation statement in the improper place is the equivalent of not filing; it does not prevent lapse." The terms of the Nebraska Uniform Commercial Code sections are the same as those being interpreted by the Iowa Supreme Court in the case cited above.

 It is clear from the affidavits and deposition submitted in support of and in resistance to this motion that the Bank had, through its officers, knowledge of the contents, generally speaking, of the originally filed financing statement of GMAC. The Bank officers knew that GMAC was financing new car inventory. GMAC argues that since the Bank officers were aware of the general content of the original financing statement and were aware that GMAC was financing new car inventory, the Bank should not be permitted to take advantage of a "technical" violation of the perfection and continuation statutes. How-

ever, as described in the *Onawa* case above, actual knowledge of the terms of a financing statement is irrelevant on the question of whether or not the effectiveness of a financing statement lapses by failure to properly file a continuation statement. *Matter of Reda, Inc.*, 54 B.R. 871 at 877–878 (Bankr.N.D.Ill.1985); *Bostwick–Braun Co. v. Owens*, 634 F.Supp. 839 at 841 (E.D.Wis.1986).

 GMAC, in October of 1985, filed a continuation statement with the Secretary of State. Attached was a copy of the original financing statement. GMAC argues that such filing is, in effect, either a proper continuation of the original financing statement, or is a new financing statement effective from and after its filing date. Since the original financing statement lapsed for failure to comply with U.C.C. § 9–412, in 1982, the 1985 filing cannot be a continuation. There is nothing to continue. The October 1985 filing cannot be found to be an effective financing statement because it does not conform to the requirements specified in U.C.C. § 9–402. Although it contains the live signature of a representative of the secured party, it does not contain a "signature" of the debtor. Instead, the document entitled a continuation statement which does have the appropriate signature of the secured party, simply attaches a photostatic copy of the 1977 financing statement signed by the debtor.

In *Mid–America Dairymen, Inc. v. Newman Grove Coop. Creamery Co., Inc.*, 191 Neb. 74, 214 N.W.2d 18 (1974), the Nebraska Supreme Court noted that U.C.C. § 1–201(39) explains that the term "signed" includes any symbol executed or adopted by a party with present intention to authenticate a writing. *Id.* at 87. There is no evidence that debtor, through its officers, had a present intention, in 1985, to authenticate the 1977 financing statement or create a new one, through the use of a photostatic copy of an officer's signature.

 On January 3, 1986, the Bank filed a broad financing statement including all personal property of the debtor. The financing statement was filed with the Nebraska Secretary of State. In December of 1986, GMAC filed a financing statement with the Secretary of State. Based on the 1986 financing statements filed with the Secretary of State, it appears that the Bank and GMAC are claiming an interest in some of the same collateral. However, it is unclear whether the Bank documents include a security interest in new car inventory. The Uniform Commercial Code at Section 9–312 provides for priorities between conflicting security interests in the same collateral. Basically, the first security interest perfected takes priority over later perfected security interests, except, perhaps, in the case of purchase money security interests. Since the Bank perfected its security interest in the collateral, other than new car inventory, prior to GMAC, GMAC cannot succeed on its claim that it has a priority perfected security interest. The motion to dismiss, now cast as a motion for summary judgment, should be granted except as to new car inventory.

As mentioned above, it is not clear from the Bank's security documents if it actually claims a security interest in new car inventory. Therefore, the issue of priority with regard to new car inventory as between GMAC, Bank and debtor as "Trustee" is not decided in this memorandum and will be subject to further factual or legal presentation if a hearing is requested.

II. Certificates of Title and MSO

 With regard to new vehicles, GMAC claims a perfected security interest in the motor vehicle dealer inventory by virtue of its security interest and filed financing statement as of December, 1986. GMAC neither held the titles to the new automobile inventory, nor did it note its lien on the certificate of title. In addition, GMAC did not keep possession of the Manufacturer's Statements of Origin (MSO). An MSO is a document transferring the new vehicle from the manufacturer to the dealer. When the dealer or a purchaser desires to title the new vehicle, the MSO plus other documents are delivered to the appropriate county official for the issuance of a certificate of title. The Bank argues that GMAC, by failing to either note its lien on the certificate of title or to continue

possession of the MSO, failed to comply with the Nebraska Statutes with regard to perfection of a security interest in a new motor vehicle. Nebraska Revised Statutes § 60–110 (Reissue 1988), in relevant part states:

> ... Any mortgage, conveyance intended to operate as a security agreement as provided by article 9, Uniform Commercial Code, trust receipt, conditional sales contract, or other similar instrument covering a motor vehicle, *if such instrument is accompanied by delivery of such manufacturer's or importer's certificate and followed by actual and continued possession of same by the holder of such instrument* or, in the case of a certificate of title, if a notation of same has been made by the county clerk or the Department of Motor Vehicles on the face thereof, *shall be valid as against the creditors of the debtor,* whether armed with process or not, and subsequent purchasers, secured parties, and other lienholder or claimants *but otherwise shall not be valid against them, except that during any period in which a motor vehicle is inventory,* as defined in subdivision (4) of section 9–109, Uniform Commercial Code, held for sale by a person or corporation that is licensed as provided in Chapter 60, article 14, and is in the business of selling motor vehicles, *the filing provisions of article 9, Uniform Commercial Code, as applied to inventory, shall apply to a security interest in such motor vehicle created by such person or corporation as debtor without the notation of lien on the instrument of title.* (Emphasis added).

The Nebraska Uniform Commercial Code at Section 9–302(3)(b) states:

> The filing of a financing statement otherwise required by this article is not necessary or effective to perfect a security interest in property subject to ... the following statutes of this state; Section 60–110, Reissue Revised Statutes of Nebraska, 1943; but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this article (Part 4) apply to a

security interest in that collateral created by him or her as debtor. . . .

The issue is whether or not a creditor may perfect a security interest in new, untitled, motor vehicles held in inventory by a licensed dealer by taking a security interest and filing a financing statement pursuant to the Uniform Commercial Code, or must such a creditor take and keep possession of the MSOs as arguably is required by Section 60–110. There is no case law in Nebraska construing the apparent inconsistencies between the Uniform Commercial Code section cited above and the certificate of title section of the statutes. Since neither GMAC nor the Bank took possession of and/or retained possession of the MSOs prior to the bankruptcy filing, if such possession is required for perfection of a security interest, neither lender is perfected and their rights in the new car inventory are subordinate to the rights of debtor-in-possession. On the other hand, if the Uniform Commercial Code perfection procedures apply to untitled new car inventory, there is still a mixed question of fact and law with regard to which of the lenders has priority in the new car inventory.

Prior to the adoption of the current version of Section 60–110 by the Legislature's adoption of LB 47 in 1977, that section permitted a creditor claiming a lien on automobiles to either keep possession of the MSOs or, if the automobiles were titled, to note the lien on the title. There was no reference to the Uniform Commercial Code or to treating motor vehicles held by a dealer as inventory for purposes of perfection of a security interest or lien. According to the Introducer's Statement of Intent, the purpose of LB 47 was to make certain that motor vehicles while held by a dealer are inventory as defined in Section 9–109(4) of the Uniform Commercial Code, and to clarify the fact that actual delivery of titles with liens noted would not be required to perfect a security interest in floor plan vehicles. *Committee Records of Public Works Committee,* Jan. 12, 1977, 85th Leg. 1st Sess. The Committee Statement concerning LB 47 also discusses the intent of the bill. It states:

When money is invested by banks, etc., in floor planning of automobiles, there is no notation of the lien on the individual titles. LB 47 states that notice of loans on the inventory cars of a new car dealer can be filed with the county clerk. This filing will insure that everyone can be aware of all outstanding loans against the inventory, and the creditor (usually a bank) who made the loan will have clear first right to possession of the inventory cars in case the dealer defaults on the loan or files for bankruptcy. (*Committee Records of Public Works Committee*, Jan. 21, 1977, 85th Leg. 1st Sess.)

From a review of the Committee's minutes of January 19, 1977, it is apparent that the discussion of LB 47 which eventually amended Section 60–110 did not focus on the problem with MSOs, but did focus upon the problem of motor vehicles in the hands of a dealer with no lien noted on the title. The issue discussed by the witnesses was whether or not such a vehicle would be considered inventory. All of the witnesses testifying indicated that the reason for amending the statute was to permit lenders to perfect a lien on vehicles held by a dealer by using the relatively simple perfection procedures of the Uniform Commercial Code, rather than the cumbersome procedures required under Section 60–110 then in effect. Ultimately, the amendment did identify such vehicles as inventory as defined under the Uniform Commercial Code and did provide that the filing provisions of Article 9 of the Uniform Commercial Code as applied to inventory would apply to motor vehicles, at least if those motor vehicles were titled and held by a licensed dealer without notation of lien on the instrument of title.

The procedure originally required under Section 60–110 was just as cumbersome for those lenders dealing with motor vehicles for which no title had been issued as for those lenders dealing with motor vehicles that did have titles. The testimony before the Public Works Committee, however, was basically limited to the perceived problems with vehicles already having had titles issued. Consistent with that testimony, the Legislature did not specifically apply the Article 9 filing provisions concerning inventory to motor vehicles without certificates of title. This omission concerning MSOs apparently meant that at the time of the adoption of the amendment to Section 60–110 in 1977, a lender could perfect a lien on titled motor vehicles held by a dealer simply by taking a written security interest and filing the appropriate financing statement. However, the lender could perfect a lien as against all other parties, on untitled vehicles subject to MSOs, only by keeping possession of the MSOs.

The 1962 version of the Uniform Commercial Code, which was in effect in Nebraska prior to its amendment by LB 621 in 1980, provided for filing of a financing statement as a prerequisite to perfection of security interests, with specified exceptions. One exception was contained in U.C.C. § 9–302(3), which exempted from the filing provisions of the Code those security interests in property which are subject to a statute of the state "which provides for central filing of, or which requires either retained possession of manufacturer's certificate of origin or indication on a certificate of title of, such security interest in such property." U.C.C. § 9–302(3) (repealed 1980). That section has been construed by an opinion of the Attorney General of Nebraska to mean that a lender that held possession of the MSO was not required to comply with the filing provisions of the Uniform Commercial Code. Op.Neb.Att'y.Gen. No. 108–65 (Sept. 9, 1965), 3 U.C.C.Rep.Serv. (Callaghan) 104.

The above-cited opinion of the Attorney General is consistent with the practice of lenders concerning new cars on dealers' lots. Those lenders, although having a security interest in writing, did not necessarily file a financing statement under the Uniform Commercial Code. Instead, they held the MSOs or made certain the MSOs were converted to titles with the lien noted.

The current language of U.C.C. § 9–302(3)(b) was adopted by the Nebraska Legislature in 1980 as LB 621. LB 621 was an adoption by the Legislature of the 1972 version of the Uniform Commercial Code. According to the comments of the

Review Committee of the draft of the 1972 official text, the drafters of Article 9, 1972 version, felt that:

Code filing should be required for security interests in inventory, because there was no reason that the Code's carefully worked out provisions for inventory to protect buyers in Section 9–307(1) and as to rights to proceeds in Section 9–306 should be confused by perfection under a certificate of title or other non-Code system. While the Code's sponsoring organizations cannot amend certificate of title laws, it is to be hoped that certificate of title laws will be amended or construed so that the Code filing system for inventory will be exclusive and will not be duplicated by the certificate of title system. *General Comment on the Approach of the Review Committee for Article 9,* 3 U.L.A. 7 (1981) at 43.

As amended, U.C.C. § 9–302(3)(b) specifically refers to Section 60–110 and provides that filing of a financing statement is not necessary or effective to perfect a security interest in property that is subject to that statute. However, Section 9–302(3)(b) goes on to specifically contradict the language of Section 60–110 and apply the filing provisions of Article 9 to collateral held as inventory. The Legislature was obviously aware of all of the language of Section 60–110 when it amended the Uniform Commercial Code three years after amending Section 60–110. It specifically referred to the section, and impliedly repealed any requirement that the lender hold MSOs of untitled motor vehicles in a dealer's inventory in order to have a lien effective against other parties.

It would have been helpful if the Legislature, in addition to amending the Uniform Commercial Code in 1980, would have clarified Section 60–110 with regard to the possession requirement concerning MSOs. However, although the Legislature chose not to so amend Section 60–110, it effectively did so by providing in U.C.C. § 9–302(3)(b) that security interests in inventory as collateral were subject to the filing provisions of Article 9, notwithstanding any language in Section 60–110. In *Dugdale of Nebraska v. First State Bank,* 227 Neb. 729, 420 N.W.2d 273 (1988), the Ne-

braska Supreme Court had an opportunity to review another section of the title act, Section 60–105, and consider its relationship to several sections of Article 2, Uniform Commercial Code. The Court ruled that statutes which relate to the same subject, but are enacted at different times, are in pari materia and should be construed together. *Id.* at 734, 420 N.W.2d 273. In addition, when construing statutes in pari materia, "if plain and unavoidable repugnancy exists between two statutes, the latest will control." *Worley v. Schaefer,* 228 Neb. 484, 490, 423 N.W.2d 748 (1988).

Therefore, by construing the statutes together and attempting to reconcile their apparent conflicting provisions, and attempting to determine the legislative intent, it is concluded that U.C.C. § 9–302(3)(b) overrides any conflicting language in Section 60–110, thereby making applicable to both titled and untitled motor vehicles in a dealer's inventory the filing provisions of the Uniform Commercial Code.

Since the security instruments executed by the debtor and granting a security interest to the Bank do not specifically, in plain language, deal with new car inventory, the motion to dismiss, now characterized as a motion for summary judgment cannot be granted with regard to the allegations in the complaint concerning new car inventory. As discussed in Part I above, further factual or legal presentation will be required.

### Conclusion

Partial summary judgment is granted in favor of the Bank and the debtor and against GMAC on those portions of the complaint alleging that GMAC has a prior validly perfected security interest in any collateral other than new car inventory. That portion of the motion to dismiss, now characterized as a motion for summary judgment with regard to the allegations in the complaint dealing with new car inventory is denied without prejudice.

Separate journal entry to be entered.